Mr Justice Baldwin,
dissenting;
The. preliminary question which has been decided by this *506 court, is one of the deepest interest to all suitors in the infe--rior courts of the United States; 'the judges thereof ;■ and the profession generally. ' The nature of the objection to hearing the cause on its merits, or to even examine the evidence or the decree; the time at which it was made, with its attendant circumstances; make this case a precedent of infinite importance as a rule for future proceedings in a court of the last resort, in the exercise of a jurisdiction exclusively appellate.
A final decree of a circuit court, rendered- in a long pending and zealously contested cause, after the fullest consideration, has not only-been reverséd ; but all its proceedings so completely' annulled, as to open the case to new parties, new bills, pleadings, issues, and evidence; and to make it necessary to begin de novo, in the same manner as if the court had never acted on any question which could arise.
This has been done, too, on an objection not taken by counsel,, either in the circuit' court, or assigned for error here in the printed brief-of their points, presented to this court as the ground - of a reversal of the -decree of which the appellants complain': nor did-either-of their counsel think proper to avail themselves'of the suggestion after it fell from the bench; until the one who opened the argument had closed his view of the first ground assigned, in the brief for error. And when on the next-day, another of the counsel of the appellants, drew the attention of the court to the objection, it was not to reverse the decree as erroneous in law or fact, but as a reason for considering it as so merely and utterly void, as-to make it improper to examine into the errors assigned by himself and colleagues; and proper to suspend the argument on the merits, till the consideration of the question thus raised, the decision of which leaves the law, justice and equity of the case untouched; while every proceeding had in it is utterly prostrated ; leaving the parties, at the end of a four years’litigation, to begin an.ew. To them it is no consolation, that these effects have been produced by an objection of mere form, hot deemed by the counsel of either party, worthy of being noticed or guarded against;’ for the action of an appellate court on a judgment at law, or a decree in equity, can be of no middle character. A reversal annuls it'to all intents and purposes; it can no longer be given in evidence in support of any right, or as proof of any fact in fávour *507 of the party in whose favour it was rendered, or against the opposite party: no one thing remains a res adjudicata, but every question of la,w and fact is as entirely open, as if the court had never given a judgment or decree. It is inconsistent with the constitution of appellate courts in England, or the states of this union, to modify a general reversal of a judgment or decree; it is absolute, and must be attended with all legal consequences, which no court can avert by any salvo or declaration that it is reversed only pro forma; the decree or judgment cannot be in any part carried into effect in the court below, or come again into an appellate court, till a new one is rendered. The same principles prevail in the ¡courts of the United States, by force of the judi'ciary and process.acts, and the seventh rule of this-court, which regulate all proceedings by those of the king’s bench and courts of equity in England, • unless otherwise provided for by law, subject to such alterations and additions as this court may prescribe to the circuit courts, ór as they may make not inconsistent therewith. . 1 Story’s Laws 67, 257. This court has uniformly acted by the. rules thus prescribed, which regulate'not only its own proceedings, but its adjudication on those of inferior courts which are . brought within its appellate power: they must, therefore, bp. considered as the tests of the conformity of the decision how. • made, with the established principles of courts of original or appellate jurisdiction, by the course of the law of equity, the rules of this court, and the acts of congress which regulate its exercise on appeals.
In the circuit court, George Harrison and others were claimants of afund.inihe hands of Mr Nixon as executor: their petitions having been dismissed on a final decree against them, they now on an appeal ask for its reversal for the reasons assigned in the brief of their counsel, which relate entirely to the merits of their claim; but at the same time contend, that the whole proceedings in the circuit court are mere nullities; because the appellants themselves, as well as the other claimants,. omitted to insert in their petitions a direct averment of the domicil of the testator, under whoáe will they all claim. . As this objection is not aimed at the decree, or the right of any party who claims the fund, it must be considered as applicable solely to the form and frame of the-original bill and petitions; *508 • intended to present, not a cause of reversal of the decree for error in law or fact, but the broad question of jurisdiction. First, whether it was competent for the circuit court, to make any decree in the case before them ; and next, whether the decree rendered is such that this.court, in virtue of its appellate power, can hearaud determine the matter appealed from. It must have occurred at once to the mind of the learned judge , who first suggested the objection, and. can not have escaped the observation of the counsel who has availed himself of it; that if the case was within the judicial cognizance of the circuit court, no decree rendered by them' could be treated as a nullity; however erroneous, it is binding on the parties till an appeal, and becomes final if none is taken within five years. It .could not be declared a void act, for any cause which did not affect the original jurisdiction, without any reference to the decree rendered by the circuit court. To justify such a course, it must be in a case where this court would be bound to reverse at all events, and where its affirmance would not cure the defect; but would leave the original decree without any effect upon the rights of the parties, and prevent it from being received as evidence in any court, state, federal or foreign.
An appeal upon any ground short of this, must affect the decree as. erroneous merely, on some matter injurious to the .appellant; who has his remedy under the twenty-second section of the judiciary act, by an appeal from a “final decree in asuitin equity,” which it declares may “be re-examined, and reveled or affirmed in the supreme court.” It follows that there is- a discretion to reverse or affirm .according to the right of the case; and, fairly, it cannot be contended, that if a decree can be affirmed on appeal, it can be considered as a mere nullity after affirmance, if the question arising, on the appeal, was one of merely error, not of jurisdiction. Nor can it be doubted, that if the merits of the case were cognizable by the court below, they are equally so on appeal: and that a final decree of affirmance binds all parties in all courts, as to the matters decreed, which must be done on a re-examination of the final decree.
Such is the general course prescribed- to this court by the twenty-second section, .in all cases coming before them by appeal: the twenty-fourth is still more explicit. . “That when a judgment or decree shall be reversed in a circuit court, such *509 court shall proceed to render such' judgment, or pass such decree as the district court should have rendered or passed; arid the supreme court shall do the same on reversals therein,-.except where the reversal is in favour of the plaintiff or petitioner in the original suit, and the damages to be assessed or the. matter to be decreed are uncertain, in which case they shall remand the cause for a final decision.”
The second cla-use of the second section of the third article of the constitution declares, “that in all cases affecting ambassadors, other public ministers and consuls, and those in which-a state shall be party, the supreme court shall have original jurisdiction. In all the other cases before mentioned, the supreme court shall have appellate jurisdiction, both as to 1aw and fact, with such exceptions and under such regulations as the congress shall make.”
The twenty-second and twenty-fourth sections of the judiciary act, are the execution by congress of an express constitutional power; which makes these provisions as imperative on the supreme court, as if they had been detailed in the body of the constitution: they form.-its constitution as ah appellate court, defining its powers, and prescribing their exercise, in re-examining, reversing or affirming the final judgments and deciees of all courts which may.be brought within its appellate jurisdiction.
The twenty-second limits the appellate power to the revision of final decrees in cases in equity, herein departing from the course of appellate courts in England and in New York ; there an appeal lies to the house of lords or court of errors, from the interlocutory orders and decrees of the .chancellor: the- other regulations .prescribed by the judiciary act, are iir conformity to the uniform course of all appellate courts, as long settled by uniform practice, adopted by the rules, .and followed in the der cisions of this court. ' This course cannot be better defined than in the words of Chancellor.Kent. “It is the acknowledged doctrine of courts of review, to give such decree as the ppurt below ought, to have given ; and when the plaintiff below brings the appeal, the court above not only reverses what is wrong, but decrees what is right; and models the relief according to its own view of- the ends of justice, and the exigences of the case. The court above acts, therefore, on *510 appeals in the given case, with all the plenitude-bf a court of equity of original jurisdiction, and the special terms of the decree, whatever they may be, become to this court the law of that case, and.no other or further relief can be.adminisfered to the party.” 1 J. C. 194, 195.
This doctrine, then, is the law of this court, not only by the acknowledged principles of the law of" equity, but as- an injunction of the supreme law of'the land; from the observance of whicb? the court can be absolved by no rule or practice con-trariant thereto. If its authority rested alone on either the recognised rules of appellate courts, or their settled practice : it might Be varied at the discretion of the court, by their power to make rules respecting practice, proceedings and process; but they can have no discretion to alter or depart from those “principles and usages of law” which congress have adopted as regulations of, and exceptions to, the appellate power of all the courts of the United states, pursuant to the provisions of the constitution.
It.must, the1 efore, be taken as a rule of constitutional law, binding on this court, that if it takes cognizance of a cause on appeal under the twenty-second section, it must, be by re-examining the decree, reversing or affirming it; and by t.he twenty-fourth, on'reversal, to give such decree as the circuit court ought to have rendered, or remanding it for final decision as the case may be. There can be no other course pursued ; for, as the appellate power is confined to those cases to which it has been extended by congress, and must be exercised within the limits and by the regulations prescribed; it can have no inherent powers in virtue of which it can review or revise the 'decrees of the inferior courts, by any general superintending authority such as appellate courts may have, whose jurisdiction has neither been conferred or regulated by.a constitution or statute. No principle has been better settled, or more steadily adhered to, than that this is a court of special jurisdiction ; whether original or appellate, which the constitution lias defined and separated by a'line, which congress cannot pass, by extending that which is original, to cases which are appellate or e converso. 1 Craneb 164, &c. As the present is an unquestioned case of appellate jurisdiction, it. must be exercised according to the regulations prescribed by congress; by an examination *511 of the final decree on its merits, if the court takes judicial cognizance of the record. Any other course is wholly unknown in an appellate court of equity; unless there is such a fatal defect in the record as affects the jurisdiction of the court below, and prevents the court above from acting judicially upon it. by hearing and determining the matters in controversy: in which case the decree will be reversed, the cause remanded, and the circuit court be directed to dismiss the bill,- or make the amendments necessary to give it jurisdiction.
It is not pretended that the circuit court has not jurisdiction of this case,-as one between proper parties,, touching a proper subject matter of controversy; nor can it be doubted that the jurisdiction of this court'is equally clear. A final decree has been rendered, an appeal regularly taken, by parties affected by the decree; who, having given the requisite security, have a right to be heard ou all matters appealed from, to ask a reversal and a decree in their favour. The party in whose favour the decree has been rendered, appears here pursuant to-the citation, with an equal -right to defend his interests, to demand an affirmance of the- decree, with a mandate for its execution.
This court, then, cannot refuse to hear the appeal, on the ground of a want of power, to hear and' finally determine all matters appealed from, which are properly and fully cognizable by both courts : and this objection does not profess 'to be founded on the want of competent parlies to a. controversy'in the federal courts, or a subject, matter cognizable in equity. As it avoids these questions, the objection defeats itself; for it must necessarily apply to the course of the circuit court in the progress of the cause, and their final adjudication on the matters submitted by 'the parties; the revision of which is the ordinary exercise of the jurisdiction of an appellate court, in conformity with the acknowledged doctrine of such courts and the positive injunctions of the judiciary act;' which it is the- direct object of this motion to prevent, and which has been effected by the judgment now rendered. There being no doubt of the jurisdiction of either court, the only questions which can -arise are, whether any of the petitioners have, pn this record, shown a right in equity to demand from the respondent Nixon, the fund which he holds in his hands, subject to the order of the court. *512 he claiming' tío interest in it, except his commissions and proper credits. The case is, therefore, one of ordinary occurrence : a bill in equity filed by one claimant, and petitions by others, for the surplus of an estate in the hands of an executor ; who in his answer interpleads, submits to any order the court may make, and prays their protection by such a decree as will save him from future litigation.
Whether a bill iii equity contains any ground .for relief, or, what is called in the language of its courts “ equity,” is not a question of jurisdiction, but of merits; the inquiry is, has the petitioner set forth a cause of action in his complaint, has he averred any matter which, if true, entitles him to the relief prayed for, or any relief, or set it forth in the manner required by the rules of equity 1 If he has, the respondent must plead some new matter in avoidance; or in his answer give some reason why he does not do, or ought not to be decreed to do, the thing required of him. If the complainant’s petition contains no equity, or sets it out defectively, it is good cause for demurrer generally, or for cause : or the respondent may object in his answer, or at the hearing, to the want of equity in the bill; arid it is a'good ground for the reversal-of a decree on appeal. So, if a question arises whether the allegations of the bill are made out by the proofs in the cause, it is a proper subject of consideration before rendering a decree in the court below, as well as review in the appellate court; not as a question of jurisdiction, but one which arises in its exercise. “ It is well settled that the decree must conform, to the allegations of the parties,” 11 Wheat. 120; and be sustained by them as well as by the proofs in the cause, 10 Wheat. 189; but whether it does so conform, and is so sustained, is determined by the appellate court; on the inspection of the whole record and proceedings'before t Item : as was done by (his court in Carneal v. Banks, and Harding v. Handy, above cited. In examining the allegations of a declaration in a court of law, a court of en'ror examines only whether the plaintiff has set out a title or cause of action. ‘‘ If,” in the language of tips court, “it is defectively or inaccurately set forth, it is cured by a verdict; because, to entitle the plaintiff lo recover, all circumstances riecessaty to make out his cause of action, so imperfectly stated, must be proved at the trial: bid, when no *513 cause of action is stated, none can be presumed to have been proved. The case is not to be considered as if before us on a demurrer to the declaration. The want of an. averment, so as to let in the proof of usage, cannot now be objected to the' record. The evidence was admitted without objection, and now forms a part of the record, as contáined.in the bill of exceptions... Had an objection been made to the admission of the.evidence of usage, for the want of a proper averment in the declaration, and the evidence had, notwithstanding, been received, it would have presented a very different question.” .9 Wheat. 594, 595 This is the settled rule of this court in cases at law, that they will not reverse a judgment for any defective averment in a declaration, not demurred to, if the plaintiff has substantially set out a cause of action ; such too is the established principle in cases in equity. As where a bill was filed to set aside a conveyance, on account of the mental incompetency of the' grantor, which contained no direct or positive averment of his incapacity; yet the court took cognisance of the. case, examined the bill and proofs, and decided that, “although 'a more direct and positive allegation that C. H. was incapable of transacting business, would have been more satisfactory than the detail of circumstances from which the .conclusion is drawn ; yet we think that the averment of his incompetency is sufficiently explicit to make it a question in the cause. The defendant has met' the charge, and we cannot doubt that his answer is sufficiently responsive to give him all the benefit which the rules of equity allow to an answer in such-cases.” 11 Wheat. 121.
In that case the whole gravamen of the bill, .the whole equity of the case, was'in the averment of the incompetency of the grantor to make a contract;.yet it was held sufficient to aver the circumstances from which the conclusion could be drawn, that it was enough if the bill made it a question in the cause, that the defendant had met the charge, and his answer was sufficiently responsive.- The court proceeded to look into lire proofs in the cause; inquired whether the testimony established the incompetency. of C. H.;. and examined the immense mass pf contradictory evidence which the record contained, with attention ; and- affirmed the decree of the circuit court of the first circuit annulling the' contract, on the ground of in *514 competency. It is therefore a settled point, that an objection to the sufficiency of t.he averments of .the bib, must, be considered by the appellate court, as one directly involving the merits of . the'case; it is the statement of the complainant’s cause of action, to which the defendant must demur, if lie relies on the want, of form, manner- or circumstance, or he loses the benefit of the objection. If he relies on an objection to the substance of the averrnent, or- its variance from the proofs in the case, he must make, it appear to the satisfaction of. the court., that the bill contains no equity on its face, that no cause of action is set forth, nor any circumstances from which the conclusion of an averment of one, could be drawn conformably to the evidence adduced. . The application of these oases to the record of the circuit court, presents only -this! difference ; by the substitution of the word domicil for usage in Reuner v. The Bank of Columbia, and citizenship for', incompetency in Harding v. Handy, the rule and principles of both- are identical in point.of law.
In applying these maxims of this court to the objection made by. the appellants to t.he re-examination of this case, the record shows that the gravamen of the original bill and all the petitions is, that Matthias Aspden made a will devising his real, and personal estate to his heir at law, and died leaving Henry Nixon, the respondent, his executor, who ljas in- his hands a large-su "plus of personal property, to which the several parties aver themselves-to be entitled by the'terms of the will, but which the exeobtor- refuses to pay over, though bound ..in equity so to do. If these averments are true, if they are made out by the proofs and exhibits in t.he cause, there is certainly equity in the bill sufficient to entitle the devisee, or legatee, to a decree agajnst the executor for the surplus of the éstate in his hands. Had- he demurred to the bill, he would have been adjudged to answer over, for there could have been no clearer case -for the interposition of a court of equity ; or if he had insisted on the objection at, the hearing, it .could not have been doubted that there was a substantial averment of a ground of relief.
The execution of the will was duly proved, the sanity of the testator was admitted, the fund was Hi (lie hands of the respondent, who. admitted the trusts, submitted to the jurisdic- *515 ' tion of the court.; ready to abide- their decree, he held the money for such person as they should, decree to be the person entitled under the will, which was an exhibit ■ in the case. The only question depending was, who was the person that filled the description of the devisee or legatee; when that, was ascertained, the whole controversy was ended. Had the will named Samuel Packer of New Jersey, the original complainant, George Harrison of Philadelphia, or John Aspden of Lancashire, England, two of the petitioners, parties to this appeal, as the'favoured objects- of this testator’s bounty; the executor would have stood without an excuse, for not paying him the surplus of the estate. It could not be a material averment where the testator’s domicil was : his executor was bound to obey the directions of. his will, be his domicil where it might. This' proposition- admits of no doubt. But as the will names no person, it must be ascertained from its terms, who was intended- to be. the devisee, or whom the law desig-. nated as such by the legal intendment' of. the words used in the will. When, that is done, the rights of. the person or persons thus designated and the duties of the executor, become the same as if he had been expressly named as the person entitled, on which the question of the domicil of the testator could have no. direct bearing.
The only direct question on the construction of the will, was the intention of the testator as to who should enjoy his estate after his death; all other questions were collateral to this, and the only effect of his domicil could be, as the groimd of an inference of his intention being, to give it to such person as should be his heir by the local law. But this is only a circumstance from which to draw an inference of intention, and before such inference could be drawn, it must be made to appear, that the law of England designated one person, and the law of Pennsylvania a different "one. If the law of both Countriés is the same in this respect, the averment of domicil in the bill would not put in issue even a circumstance, from which any conclusion could be drawn ; and so far from being matter of substance- affecting a.final decree, it would not be a ground of special demurrer. If it once becomes the established rule- of •this court, that the decree of a circuit court shall be annulled on a motion, without an examination of the record; because it *516 does not set out an averment óf a collateral fact or circumstance bearing on the intention of the testator by inference merely; then every such fact or circumstance must be averred distinctly, of which domicil is but one of many. The state of. a testator’s family and property, is always referred to', to ascertain the devisee or thing devised; evidence of other collateral facts may be introduced in many cases to aid in the construction of a will, or to show the intention of the testator ; but no court of equity ever held it necessary to aver those matters, in a bill* brought to enforce the trusts of the will, in favour of a devisee . or legatee. In this case, however, the original bill alleges the testator to have been a citizen of Pennsylvania, at the time of his death; this is done in direct and positive terms; it is only necessary,, therefore, to apply to this averment, the principle laid down by this court, in Harding v. Handy. Is citizenship a circumstance from which the conclusion of domicil may be drawn? Is.it sufficiently explicit to make domicil a question in the cause ? and has the respondent met this part of the bill ? These questions are of easy solution. The domicil of a citizen of Pennsylvania is certainly not presumed by law. to be in England, without some proof of liis residence there, but is presumed to be in Pennsylvania till the contrary is proved. The respondent has considered the averment of domicil as made, for he has answered it; the parties in the cause have deemed it a question raised, by taking testimony touching it; each, of the .ten counsel who argued the case in the court below, made it a point, except one, who did not deem it material; and the court thought proper to take it into their consideration and express an opinion upon it as a point which had been argued — not whether the domicil' had been properly averred, but where it appeared by the evidence to have been in fact, and its bearing on the will and cause. It was the most deliberate opinion of both the judges of the circuit court, that the law of both countries pointed to the same person as the devisee ; and that the fact of domicil had no bearing, on the intention of the testator, or the construction of his will. As this was a question of local law, arising directing in the ca:se, it was deemed necessary to examine it thoroughly, before rendering a final decree; and if it is now one vital to the case, it would seem proper at least to consider whether the conclusion of the circuit court was .go clearly wrong on the law *517 of Pennsylvania, as to justify this court in annulling their final decree, without an argument on the point.
In this opinion the circuit court were'supported by the counsel of the appellant's, in their printed brief, presented for the argument of the cause in this court. Their-’third point is: “ that the law of Pennsylvania is to govern this case, and that by that law they die entitled.” Their fourth point is : “ but that if the case is to be decided by the law of England,- still the" appellants' are entitled.” Thus most distinctly admitting the identity .of the law of both countries’in its application to -this will, which was also asserted by the counsel .of the appellees. Nor have the appellants’ counsel, in their argument of this motion, even contended that there is any difference between the respective laws, as to tlie.person -who is the heir at law of the testator, or who are his next of kin by the statutes of distribution. In this union of opinion between the judges of the circuit court, and the counsel of all parties, thus apparent tb this court, it was. not an unreasonable expectation that they would, at least, have, looked at the record, the evidence, the law and. decree, before they would authoritatively decide, that there was nothing deserving an argument without the averment of domicil.
The whole case turned upon a question of local law, which hadlong been settled by the highest judicial tribunals of Pennsylvania, and sanctioned by the legislature as firmly as any one principle of her jurisprudence ; that the common law of England, as. to the descent .of property, had, from the charter of Pennsylvania, been adopted in all cases not specially provided for by act of assembly. It remained only to examine the legisla-. tion of the state, to ascertain whether the present- case was embraced within the provisions of any law, had it been a case of intestacy; if it was not, then it was an admitted rule, that the common law governed it.
. But as the present is not a case of intestacy, the range of inquiry is still more narrowed; it turns upon the words of the will, which is the law of the case, paramount to any other. Local laws can have no other effect on its construction, than by their presumed.operation on the mind of the testator when he made his will, as an indication of his intention to refer to the law of his domicil, defining its terms. Yet, before, such *518 intention can be inferred, it is a settled maxim of the'law, that it must stand well with the words of the will; it cannot be admitted to vary its plain words, or their settled legal signification.
If these considerations afforded no ground for inducing the court to give the record an appéllate inspection ; there ate others which may serve as some apology for the court below, and the counsel there, as well as here, for overlooking the indispensable necessity of án averment of domicil, in order to give to either court jurisdiction over, the subject matter of the cause. In the
first place, no such rule is laid down in any book of equity, practice, or any adjudged case in. any court of equity in England or this country, and it forms' no part of their practice, as adopted by
the acts of congress and the seventh rule of this pourt. In the next place, if such averment had been required by the ordinary rules of equity practice, it was necessarily dispensed with, by the adjudication of this court on the subject of domicil, in a case of intestacy, which is much stronger than one under the
■ will; for in the former -case the local law applies directly to the estate of an intéstate, as the rule by which it shall be distributed. ’ The law of the situs of the property, the domicil of the intestate, or of the place of administration, must govern ; but which should be adopted by this court, was elaborately argued in. 1831, in the case of Smith, administrator of Robinson v. The Union Bank of Georgetown, 5 Peters 518, 523. In that case, the intestate was born in Maryland; domiciled in Virginia; died in Pennsylvania ; had personal property in this district, being a claim upon the government, on which administration was had here; he died insolvent. The question arose by what law his estate should be distributed among his creditors; on which this court decided, that it should be the law of the place of administration, and not.of the domicil, which was the point directly adjudged, and from which only one judge dissented. The question of distribution among the next of. kin, was not directly before the court, but was noticed in their opinion, from which the same judge dissented also.
In alluding to the latter question, the words of the court are:
“ With regard to the first class of cases, we expect to be understood as not intending to dispose of them directly or incidentally. Whenever a case arises upon the distribution of an *519 intestate’s effects exhibiting a conflict betwéen the laws of the domicil and those of the situs', it will be time enough to give the views of this court on the law of that case.”
. “ That •personal property has no situs-, seems rather a metaphysical position, than a practical and legal truth.”
'In noticing the provisions of treaties on this subject, the court say, “ it .would seem that such a provision would be wholly unnecessary, if there existed any international law, by which the law of the domicil could be enforced in that regard in the country, of the_siius,; or if the fact of locality, did not subject the-goods-to the laws of the government under which they were found at the party’s death. In point of tact,-it-cannot be questioned, that goods thus found within the limits of a sovereign’s jurisdiction, are subject to his laws; it would be- an absurdity in ¿emsto.affirmthecontrary.”' “This necessity of administering where the debt is to be recovered, effectually places the application of the proceeds under the control of the laws of the state of the administration. And if in any instances the rule is deviated from, it fornls,pro hac, an exception, á voluntary relinquishment of a. right countenanced by universal practice, and is of the character of the treaty stipulations already remarked upon, by which foreign nations surrender virtually a rights which locality certainly .puts in their power.”
Against these doctrines, the dissenting judge most earnestly but in vain remonstrated, insisting that it was settled by the international law of the civilized world, that personal property had no situs; that it was distributable by the law of the domi-cil, and that if these principles were shaken by this court, or declared to be unsettled, irremediable and utter confusion would ensue. For it was a subject on vv hich congress could not legislate out of‘this district; nor the states of this union, or foreign-nations beyond their respective territorial limits; the inevitable result of which would be, that the law of distribution of an intestate’s estate-' would be different in every state and country, in- which he owned any bona notabilia. That the court having decided, that a pecuniary claim on the government of the. ■United States, was hona notabilia in this district, subject to dis- ■ tribution by the local law; it followed, that if the intestate had debts due to him in different states, or owned a part of the funded debt of different governments, or of the stocks of local *520 corporations, there cduld be no uniform rule of distribution, either among creditors or distributees.
But the result of the most deliberate consideration of this court, is that which has been solemnly adjudicated and promulgated as. the rule and guide for all the inferior tribunals of the United States. It would not have comported with the judicial duty of the dissenting judge, presiding in' the circuit court of Pennsylvania, to have declared to the ' profession and suitors, that his overruled opinion must be taken as the law of the case. Had the counsel of the parties complainants moved that court to dismiss the bill, or'petitions filed by themselves,- or, after a final decree, h'ad asked that it should be declared to bean extra-judicial act, because the domicil of á testator (not of an intestate), had been averred only as a conclusion to be drawn from an express averment of citizenship, the circuit court would have been bound to have decided, that it was unnecessary, according to the decision in Robinson v. The Bank ; for having settled that domicil was wholly immaterial in distribution among creditors, and when they declared, that “ we expect to be understood as not disposing, directly or- incidentally,” of the - question of distribution. among next of kin ; the "dissenting judge would have felt it his duty not to have disappointed an expectation, not only so reasonable, but which he wóuld have obeyed as a mandate of paramount authority. The more especially, as the whole reasoning of the court of the last resort, went to negative the materiality of domicil in any case ; but most emphatically was the dissenting judge bound by his every duty, not to declare the law of the domicil to be the law of the case, in face of the distinct proposition of the court — “ that personal property has no situs, forms rather a metaphysical po- . sition, than a practical and legal truth,” and thus'substitute metaphysics for law as the rule of his judicial action.
At the time of rendering their final decree, the circuit court for the Pennsylvania district could not have foreseen that without overruling the decision of this court made in 1831, by the «ame high authority which pronounced it; when no question was presented to this court by counsel touching the matter, or argued by them after the,suggestion had fallen from the bench: It should now appear to the same judges, to be a principle of law so manifest, so clearly and dedsively settled, as to make the *521 most solemn decree of inferior courts against executors mere nullities, because the pleadings on which they were foundéd did not contain an express averment of the domicil of the testator. Although the bill and answer contained express averments of the citizenship of the testator, the place where he made his will', the place of his death, of administration, and the situs of the property. - As these averments were in strict-conformity with the decision and reasoning of this court in Robinson v. The Bank, it could not have been thought, that there remained in the vitals óf the record, á disease fatal to the action of the-circuit court upon the matters in issue.
Had it been objected, that the situs of the property, or the place of the testator’s death or-of administration, had not been averred, the necessary amendment would have been made j though the pleadings had averred the domicil, that'must have been deemed immaterial according to the then doctrine of this court, which was that personal property had a situs without any reference to the domicil of an intestate. It follows that if an averment of the situs was indispensable, that of the domicil could not be, as the rules of distribution would be different by the local laws. And as the law of the situs was the rule, when these pleadings and issue were made up, and th.e final decree rendered, it would most certainly have stood the test of this objection, though it must have been reversed had the situs not been averred, notwithstanding the domicil had been, however explicitly. Yet now it seems that a record containing an averment of the situs in'all its bearings on the case, is mere blank paper, because, the domicil is'averred only by way of inference or conclusion from facts stated.
In 1831 the materiality of the situs was “a legal and practical truth,” that of the domicil was- “ a metaphysical position,” an absurdity in terms, in the opinion of all the judges of this court, but one. In 1835 the materiality of the situs, is the metaphysical position; and that of the domicil, the legal and practical truth. This radical difference between the promulgated law of this court, on the same question arising at these periods, presents a conflictio legum which the circuit court of Pennsylvania were not bound to anticipate; the consequences of which it is hard to visit upon suitors in that court by drawing, a sponge over all the proceedings in this cause, to their great delay and *522 injury | though they were had and conducted according to the solemn opinion of this court as to the law of the case, when the suit began and ended. ■ At that'time the judges of the circuit court had for their guide no better rules for their decision, than those laid down in 1831, and the practice of this court at the samé term; which to one of the judges at least, is some apology for not exercising his legal acumen, in discovering a fatal defect of jurisdiction over a cause, in which, it now appears, he has assumed an unwarranted power to render a decree on the merits. It is his consolation to find, not only in the solemn • judgment in Robinson v. The Bank, the reasons for overlooking the indispensable necessity of an averment.of domicil, but the fact, that in two other cases in the same term this court had practically decided if to be unnecessary.
The case of Backhause v. Patton, adm. cum test. ann. de bonis non of James Hunter, was a bill in equity tó compel an account of the personal estate of the testator, and. for its due distribution; the bill averred the testator to be a citizen of Virginia, but contained no averment of his domicil. 5 Peters 160, &c.
The case of Page v. Lloyd, executor of Hanbury, and Patton, adm. cum test. ann. of Mann Page, was on a a similar bill, containing an account of the situs of Mr Mann Page’s personal property in two counties in Virginia; but no averment of either his citizenship or domicil. 5 Peters 304. This court took cognizance of both cases on certificates of division from the circuit court of Virginia, and finally decided on all the matters so certified, without a doubt at the bar, or on the bench, of the regularity of the record ; and as the rules of its decision are the same, whether a cause comes up on a certificate, or on appeal, these must have been deemed records on which it could act judicially. It is not doubted that a further examination among the records of • this court, on appeals from other circuit courts, in cases of equity against executors, will furnish additional proof: that if the practice of that of Pennsylvania has been in violation of all rules, it has the fullest sanction in the course of this court through all time ; and this is the first time it has annulled a decree for such cause.
' It is equally unknown to the fundamental principles on which it is organized as an appellate court, which in this case has not exercised its powers as directed in its constitution, by *523 re-examining and reversing the decree, and rendering such a , one as ought to have been given; Its power has been exerted on a summary motion, not on an assignment of errors': the . decree and all preceding acts of the circuit court have been declared null and void collaterally, not for errors in the record or decree ; for this court would not re-examine either, nor have they, in remanding the cause, directed what final decision shall be made. The only exception in the twenty-fourth section of the judiciary act, which authorizes any departure from the injunction to render such decree as ought to have been made, is, “where the reversal is in favour of the petitioner in the original suit, and-.the matter to be decreed is uncertain ; in which case, they shall remand the cause for a final decision.” But this case does not come within- the exception, for though the reversal is in favour of petitioners in the original suit, the matter decreed was certain ; it was, therefore, no .case tobe remanded, though if it was, the court has not remanded “ the cause for a final decision.” Its mandate is. a peremptory order to the circuit court,, to amend the pleadings from the beginning, to admit proofs of new matter and new parties; in one word, to make a new case throughout; and concludes with ordering, “such other proceedings, are to be had in the said cause by the said court, as to law, justice and equity shall appertain.”
It had, heretofore, been thought to be the province of a court of original jurisdiction in equity, to decide on amendments in their legal discretion, or according to the act of congress with which this court never interfered ; that after publication, and before a decree, the admission of new proofs, new- matter, or new parties, was discretionary with the chancellor on a petition presented; that after a decree made, but before enrolment, neither could be introduced into a cause, unless by a supplemental bill in the nature of a bill of review ; nor after enrolment, unless by a bill of review on newly discovered evidence, filed by parties or privies to the original suit. It was also believed, that there was no distinction better established by the law of equity, than the different effect of defective pleadings, when demurred or excepted to in the court below, and when they are unnoticed till the cause is removed for review in an appellate court. And it has hitherto remained *524 equally well settled, that no decree will be reversed, even on a bill, of review, for any new discovered evidence, unless in a case where a new trial would be awarded by a court at law.
But if. the decision now made, is to be hereafter considered as a precedent for the future action of this court on appeals in equity cases, it portends a fearful-change in the rules which have heretofore drawn a line between the original and appellate jurisdiction of the courts of the United States, the consequences of which cannot be foreseen. The practical effect of this judgment and mandate is. an assumption of the province of the former, not only as to the rules of practice, pleadings, amendments, parties, proofs, and issues, which depend mainly on the exercise of discretion ; but is giving to an appeal from a final decree, the effect of a special demurrer to a hill, an exception to m answer, as well as of an original supplemental ox bill of review, in all their respective- operations on the case. This appellate court does not decide upon the case or decree appealed from, it orders an entirely new one to be made, by an utter prostration of every thing in the record, from the original bill throughout. It does not remand this cause for a final decision by the circuit court; it first divests it of all the attributes and requisites of a case for a final decree, and then commands that a case shall .be -made up for their original jurisdiction, as a suit in equity, under positive directions, which leave no discretion in the exercise of their jurisdiction over the matters referred to in the mandate.
The reasons-assigned by the court for these proceedings are worthy of the most serious consideration. They decide that an averment of domicil is indispensable, because it might indicate the intention to give the property to such person as would be the heir at law by the law of one country, who would not be the heir by the law of the other, but adds, “ we- do not say what is the case.” “ That the country by whose laws the will is’ to be interpreted, should be first ascertained, and then the inquiry is naturally presented what the provisions of those laws are.” They also direct an averment of the domicil “ at the time of the will being made,” “ at the testator* s'death” and K in the intermediate time” (a period of thirty-three years); yet declare that they do not mean to express any opinion as to the effect on the will, of the domidl being at a different place at these different times. *525 Whence then arises.the necessity of the averments? The natural order of inquiry would seem to be, whether there was any difference between the law of England and Pennsylvania, in the interpretation of the will; and next, whether the will should be construed by the law of the domicil at the death of the testator, or at any other time ; for the materiality of the averT ments depends entirely on the solution of these two questions. If the law of both countries was the same-at all times, the averments are useless. It is surely a strange ground for uprooting a cause from its foundation by an appellate court, merely because the original bill does not contain an averment of a fact which, by possibility, may be material as the evidence of intention, or the existence of that fact at a time when it could have no possible bearing ori the will.
When .'the new case now directed to be made up, shall have been decided by the circuit court, and come here- again on appeal, it is to be- presumed that this court will then deign to inquire by what law this will must be interpreted, and what the provisions of that law are. It is also to be hoped, that by that time they will feel prepared to instruct the circuit court of Pennsylvania, whether their next final decree shall be in conformity to the law of the testator’s domicil, when he made his will, when he died, or at what period of the thirty-three years which intervened, not omitting an explicit opinion upon the preliminary question, whether the domicil has any bearing on' the will. As the mandate now is, that court is ordered to proceed “ as. to law,-, équity and justice shall- appertain,” but are uninstruoted by what law or rule the justice or equity of the case is to be ascertained, other than the law which the testator has prescribed in his will: The predicament in which that court is now placed, is a most unpleasant one ;. their.past errors have been so gross and palpable, as to make their whole proceedings nullities; yet they remain in the dark as to the means of correcting them ; the averment of domicil will lead to no new evidence or issue, not in the present record, and no new question of law or fact can arise in that respect. When a new case shall have been presented, it will differ from the .present only in this one averment, which, by the admission of this court, cannot have the most remote effect on the decree, unless on the contingency *526 of a' conjlictio légum, which is now as little ascertained as before this reversal.
If the action of this court had stopped here, the embarrassment of the circuit court would be sufficiently great, in being precluded from the exercise of all discretion in the proceedings, preparatory to a final, decree, by the peremptory orders now given on all matters for their ultimate judgment; and ás to that, left without any directions how to avoid the recurrence of the same errors which have caused great and expensive -delay. There is, however, another ground assumed by this court, which is infinitely interesting to all persons whose rights may be affected by its appellate powers in equity cases, as well as to all inferior courts on .general principles; but most emphatically to ithe judges of that court whose proceedings have been thus roughly handled in the opinion delivered. After the direction to make the averments, the court remark, “ it appears from the motions which have been made to this court, as well as from certain proceedings in the court below, which have been laid before us in support thereof, that there are certain claimants of this bequest, asserting themselves to be heirs at, law, whose claims have not been adjudicated upon in the court below, on' account of their having been, presented at a late period.” “As the cause must go back for further, proceedings, and must be again opened for new allegations and proofs, these claimants will have an opportunity of presenting and proving their claims in the cause, and we are of opinion they ought to be let into the cause for this purpose.”
The “ motion” alluded to,'was.to revise the whole proceedings in the cáse, made by the counsel of persons who were not parties or privies in. the original suit, or to the appeal) the “certain proceedings in the court below”, were had, on a petition asking for leave to file a bill of review by those persons, for newly discovered evidence, and to make themselves parties. Leave was refused, for the reasons given at length in the opinion delivered by the circuit court, some garbled extracts from which, the counsel who urged the objection taken to the want of the averment of domicil, not the counsel who made the “ motion” referred to by the court, thought proper to read in the course of his argument. Had the whole opinion been read by the counsel or the court, , they had seen the reasons of the refusal to permit *527 the bill of review to be filed; it would have been most apparent not only that it was not because the petition “ was presented at too late a period,” but the circuit court expressly declared that the petition was presented within due time after the final decree, had there been no other objections. The grounds of the. objection to the petition were, that those claimants never asked to be admitted into the cause, till after the final decree, and the pendency of the suit in this court on the present appeal; that the circuit court could not reverse theirfinal decree in any other way, than by a bill of review for error apparent or new matter. That such bill lies only in favour of parties or privies to the final decree, in neither of which charT acters could those persons stand; that their case was not supported by the requisite affidavits ; that the matter relied,on was not new, or newly discovered, but had been relied on in bills in the courts of chancery and exchequer, in England, years before the petition-for review, and by the same parties; that even if new, it was not competent to procure a decree in their favour ; • that with full knowledge of the state of the fund, and the pen-dency of this suit, they had been guilty of such gross and unaccountable negligence, that.no court of equity could afford them any relief on a bill of review, and if they had any remedy, it must be sought in some other mode.
The circuit court could not adjudicate on their claim, before it was presented for adjudication, and when so presented they had no longer any power of adjudication over it, but on a bill to reverse the original decree by review for error apparent, or on an original bill which the petitioners had a right to file. The bill of review for new matter, is a matter of favour and discretion, which, in the case presented, they could not permit without the utter disregard of the oldest and best established rules of the law of equity; whereupon the parties filed their original bill, on which there has not been time for any proceedings to be had. It is, therefore, a gratuitous assumption, that “ those claims were not, adjudicated on in the court below,” “on account of their having been-presented at a late period unless this court intended to refer to the gross delay of the parties before the final decree, and the settled principles of law which forbade that court from letting the claimants into the case on a bill of review for the causes assigned. The judge who gave *528 the opinion of the'cifcuit court, feels.bound to repel the imputation which would otherwisé_rest upon the “ certain proceedings in the court below” as wholly erroneous, and unfounded, on any other, construction which-may be given to that part of the opinion of this court'containing-the allusion to those proceedings. ít is also his right and duty to inquire, by what rulé of law, a court of mere appellate power over final decrees oí a circuit court, assume appellate jurisdiction over a subject matter'not contained or referred to in the record of the cause before them on appeal ? By what power this court can review the proceedings of that court, on a petition for leave to file a bill of review to reverse their own decree; after an appeal; on new discovered matter, which rests, exclusively in their , discretion as to granting or refusing it, and especially after the parties had acquiesced in the decision and had adopted another remedy? And above, all, by what warrant this court can act on an appeal by the parties now before them, in favour of persons whb are utter strangers to the record and suit, who, being neither parties or privies, can be heard only by an original bill filed in a court of. original equity jurisdiction?
. TheTcnowledge that these persons had desired and had been refused admission into the cause,, not. having been derived from the record, was wholly extrajudicial, and is so admitted by. this court; yet it is made the basis of judicial action, and its peremptory mandate to the court below to admit them as parties, and hear their proofs. Thus indirectly and collaterally^ but most effectually reversing the refusal to permit them to file a bill of review1, and giving them not only all the benefits which they could have desired from a bill of review actually filed, but of an actual reversal; nay, much more substantial benefits. On the hearing of a bill of review, the plaintiffs are confined to the new matter set forth in their bill; and this would have been the utmost extent of thé relief which could have been given them had they appealed to this cpurt, obtained a reversal of the proceedings in the circuit court on their petition,, and the case had been remanded, with directions to permit the bill of review to be filed, and its merits to be adjudicated. Whereas they now come into the cause, as original parties, with the same liberty as to proof, as those who have been‘ contending for years. They are likewise fully *529 absolved from every .requisition, and duty enjoined by the law of. equity, as the-indispensable conditions of their admission as parties to .a suit after a final decree,, as-well, as from all the consequences of- gross and long continued negligence. All this has been done in their favour, without any appeal by them, . but on information laid before this court, in support of a mo-, tion, which they would not listen to, and on which they could not act directly in virtue of their appellate power, consistently with the acknowledged doctrines of courts' of equity, or the directions of the judiciary act, that is an appeal by the party aggrieved by a final, decree.- In the present course,, then, of this court,’ in relation to those persons who are no parties to this appeal, as also to . those who are proper parties, it must be ■asked: what brings any decree or other proceeding of a circuit court in equity, within any.power of this, if not an appeal? what the act of reversal necessarily implies, if not jurisdiction of the case and its exercise? or what is the nature of.that jurisdiction, if it. is not. appellate? and’what respect is paid .to the judiciary .act, if this-appellate jurisdiction is not exercised by re-examining the. record and proceeding, according to the directions of the' law which- cpnfers the power, and is the only authority by which any proceeding of a circuit court can be reviewed, or its final decrees be reversed?
As the court has reversed and annulled every proceeding which has been had, directly or collaterally, in this suit; whether it related to the rights of parties, privies, or strangers to the record, to the subject matters of appeal, or those which have come to (.heir knowledge without' judicial information : Inasmuch as their whole action has been on a summary motion to reverse, solely for the want of an averment in the bill, which the court1 most cautiously avoid deciding to be material to the merits of the cause, otherwise than in the event of ah ’ unascertained and possible conflict of laws not asserted to exist, and wholly refuse to decide any one matter put in issue by the.’ parties, as to either law or fact. The mandate of reversal must be referred to some other than their appellate power, as granted by the constitution, defined,- limited and regulated by congress ; for it cannot be pretended to be within the legititimate scope of any construction which can be given to the words “ appellate jurisdiction,” which necessarily requires re-exami- *530 of what had been before adjudicated in the court bélow. If the jurisdiction now exercised is original, it is only necessary to refer to the decision of this court in Marbury v. Madison,- to pronounce it unconstitutional,. Be it, however, appellate or original, it is incompatible with the organised laws of this cqurt,- with the principles and usages of law in those appellate tribunals from which we have adopted our rules, and can Have no sanction from precedent, unless by some silent unadjudi-cated practice, which may have crept into our proceedings wiíhoUt a due consideration, and which has been often decidéd, is not binding as authority, and is - never - too late to correct when its errors áre discovered. 8 Wheat. 321, 322.
There is no power so dangerous as that which can be traced to no definite or authoritative source, or which is exercised without a reference to some fixed principles; it is in the nature of that which is assumed by any department of government, to be capable of no other limitation than such as it may choose to prescribe to itself; while that which is conferred by the constitution or statutes, is defined, limited and regulated in its exercise to the cases specified, and in the mode prescribed. Such are the áppéllate powers of the circuit and supreme courts of the United States ; they are of limited jurisdiction — -necessarily incompetent to act by any prerogative or inherent power-; as the creatures' of the judiciary act, they are not ■ at liberty to. exercise any power over theCprbcefedings of inferior courts, by any general supervisory power, such as has been assumed by the king’s bench and house of lords. Their supervision is only by writ of error, or appeal, and such writs as congress have authorised them to use ; so that in whatever case they act as an appellate court, it is by-special authority, and can exercise no other than what is appropriately appellate, as contradistin-guished from original jurisdiction".
In the present case, there seems to be a mixture and excess of both, whether the mandate and opinion are tested by the rules of other courts of appeal, or the acts.of congress.
The house of lords act as an appellate court by their own authority without an act of parliament, hut have never assumed any original jurisdiction on appeals in equity causes, or reversed the decree of a chancellor, because an issue before him.will not-enable the lords to.niake a satisfactory decree; they remand the cause for amendment; 1 Bl. P. C. new series *531 471, 477; or give the party leave to withdraw his appeal; 2 .Bligh P. C. 392; S. P. 12 Wh. 12.
" Such a course would havé been peculiarly proper in this case: the only irregularity complained of on this motion, was by the appellants’ own.fault, in not-making an averment in their own petitions, which is admitted was amendable^ and is so decided by the court; and.if cannot be denied that it was competent to them to remand the cause for this purpose, 12 Wheat. 12, or permit the. appellants to withdraw their appeal, to enable them to amend their own petitions, if the court deemed it indispensable to, make a final decree on its merits. But it is most confidently asserted to be against all rules,, and without precedent, to reverse a decree and decláre all previous proceedings void for such.a cause; no court of original jurisdiction equity, can- annul its own decrees- without a bill of review even for error apparent; this has been the law from the time of Lord Bacon.
This court has no power to revise its own decrees after the term expires, unless for clerical errors ; it can exercise no original jurisdiction in this case ; and that which has been exercised is not appellate, by any rules which define what appellate power is, and.its lawful course. So far from adjudicating any one matter appealed from, or point of law or fact'presented by counsel, they have left every right and claiin of the parties wholly unnoticed; and though they have-annulled every proceeding of the circuit court, have not adjudged any one order, or .their-final decree, to be erroneous in law or fact. But have done it for the ostensible purpose of inserting in the bill and petitions, an averment of a fact which would have been directed of course, in the circuit court, on suggestions of either party; and solely to meet a contingent question of local law, which that court, in their solemn opinion, declared could not arise in the cause, and which the counsel on both sides argued did not exist, and would not be raised.
There is only one rule by which such a proceeding can be held to be the legitimate exercise of appellate power, “sie volo sic jubeo stat pro ratione voluntas;” the opinion of the court precludes any other conclusion ; for if they had appellate jurisdiction, they were bound to give the record appellate inspection and consideration ; not having done so, their opinion *532 and mandate is their judgment, that there was no case before them for their appellate action.
This presents another view of this case which is alarming as a precedent. This court has no more power to declare and consider the proceedings of a circuit court null and void, than a district, circuit or slate court has, unless they are before them by an appeal, according to the act of congress’1';' excepting such a case, the powers of all these courts are equal. All are bound to (respect a judgment till appealed from, however erroneous ; while any one may.disregard it, even as prima facie evidence of any fact professed to be adjudicated, if the judgment is, void. If the course of this court is consistent with the rules of law, then the final decree of the circuit court would be as much a nullity after the .expiration of the five years limited for an appeal, as it is now; and if a nullity in this court, it must be so in every other: . If the want of an averment of a testator’s domicil in a bill of equity nullifies all subsequent proceedings against an executor for an account, there are many void decrees on the records of this court, which state courts may declare so by the same power with which this court has acted in this case.
This rule of action must be taken to be, that the bill must contain direct' averments to meet every possible contingency which may arise in the proofs, as to questions of fact or law ;• that it is not sufficient to aver a' fact; from which the necessary conclusions may-be drawn, though the parties have taken issue upon it in both courts, and thus admitted that there was a proper case for the exercise of their respective jurisdiction. The -mandate admits of no other conclusion; than that the action of the circuit court on a bill or petitions like the present, is wholly without legitimate-power or jurisdiction, and their whole proceedings “ coram non judice ;” if so, it follows that their decree is-not a judicial' act, entitled to the least respect in any. court..' If this court can declare it void without appellate re-examination, it is because itis an extra-judicial act; and surely.no one can contend that the extra-judicial proceedings of this court are entitled to anymore respect. As if they should award a mandamus to a secretary of State, reverse the judgment of a state court in a case not within the twenty-fifth section of the judiciary act, or take cognizance of an ori- *533 • ginal bill in equity between individuals. Let it once become a settled rule, that the want of an averment like the present is' fatal to jurisdiction ; the proceedings of no court can stand the test of a scrutiny so severe as has been applied to these. .
With the precedent now established,'the judges of state ■courts will look with microscopic eyes at our records, as well as those from other states, -and be sure to find, at least to their own satisfaction, some defect which might have been fatal on special demurrer or abatement, and.in their turn declare our decrees and judgments void, by the same summary power. Nor will the consequences stop here ; the federal courts willexer-cise the same power over the judgments of state courts, without appeal or writ of error ; their proceedings, in cases not within: their judicial cognizance, are as much nullities as - those of a circuit court, and may be declared void by this court on the same rule as is now adopted. Let the directions of the judiciary act be nullified by following up this precedent, the appellate, power of this court becomes absolute, arbitrary and illimitable; and all other courts may be justified in following the high example.
There is yet another view which must be taken of the judgment now rendeied. The court has ordered the averment of domicil to be máde at the death of the testator in 1824, at the making the will in 1791, “ and in tlie intermediate period, (if there was any. change) so that the elements of a full decision may be finally -brought before the court.” Each averment being then considered as eqitally indispensable, it must be deelued that the omission of either- is equally fatal to the proceedings of the circuit court; each must, therefore, be considered as having a vital bearing on the construction of the will, or there would not have been a positive order-to insert them. Such an order may indeed afford “ the elements of decision,” but must protract it till many of the parties to the suit shall have passed away. When the fact of residence, at different times ' during thirty-three years, shall have, been ascertain jd in the circuit court, they must then decide in what place the law adjudges th^.domicil to'have been at the time of each change of residence; then arises the question, by what law the will is t.o be interpreted. As the case of Robinson’s Administrator v. The Bank, is now overruled, the law of the sit-us of the pro *534 perty of administration or .making the will, which is Philadelphia, is not to be regarded, the law of the domicil must' govern; but the court are left in utter darkness as to the rule by which to apply that law, should the domicil appear .to have been in different places at different times. As the circuit court has hitherto been so unfortunate as to have been ignorant of the effect of the domicil, in relation to a will of personal property, and as one of the judges has ,the misfortune to dissent again on the subject, it is much to be feared that, as there may have been, possibly, three or more places of domicil in so long a' period, at least one, if not more, final decrees may be reversed, because the proper one may not have been designated in their opinion.
Hitherto the law of the domicil at the death of the testator, has been deemed the rule; but this point must now be considered as unsettled, or the court would not have directed its averment at any-other time, as indispensable to a full decision of the cause ; as it remains for this court, at some future period, to declare the law on points so doubtful, great delay must necessarily take place, before it can be known by what law the will must be construed ; next, what the provisions of that law are; and lastly, what ought to have been the first inquiry — ■whether the domicil of the testator is, or in any possible event can be, in any way, a material question in the cause.
Before the decision of this case, it was considered to be a settled principle, that a final decree in chancery was of equal effect-as. a judgment at law, till reversed. 6 Wheat. 115.. That, the sufficiency of an averment in a declaration, bill, 91-petition, was a question of merits examinable on demurrer, at ■ the hearing, on a motion, in arrest of judgment, or by writ of error or appeal; but in no case was a question of jurisdiction, unless for the want of parties or a proper cause of action. That if there was a substantial cause of action alleged, all defécts in the pleadings were cured by a- verdict or decree, if not.pleaded or demurred to for cause ; and that no appellate court could reverse a final judgment or decree, for any error in either, on the ground of an insufficient averment, if the plaintiff’s case was one that would entitle him to a judgment on a general demurrer.
. So the law was taken by the counséi for the appellants themselves, and so it would have remained, had not the court *535 prevented them from arguing the points in their printed brief, arid yielding to the suggestion of one pf the judges, decided, that they would examine no question in the record, nor hear any argument on any point except one, which was. not stated at the bar in either court, and may have no bearing on the rights of. any party. This is another innovation upon the settled uniform course of all appellate courts, which makes this precedent an alarming one.
It is an established rule founded on the soundest principle of jus ticé,’ that a party shall not be permitted to reverse a judg-merit’or decree, on an objection not made in the court below. Upon an objection being made in. the house of lords, that an account had not been taken in the court of chancery, and it appearing that none had been called for previously, by the party making the objection; lord Eldon observed, “if this cause had been heard in the court of chancery or exchequer in England, no client could have induced a counsel to make that a point, at the bar of this house, under such circumstances; .because such counsel having been previously conversant with. the cause, would have known.that as it was not made below, it could not be made by way of appeal. Had this cause been heard before mé, and had. I presided during the argument of the appeal against. it,. under the circumstances, that have occurred, I would not have allowed counsel to make the point at your lóráships’ bar.” 2 Sch. and Lefr. 712, 710, 718. When the opportunity of objection is passed by in the court below, it is .taken to have been waived; 2 Sch. and Lefr. 713; 12 Wheat. 18 ; S. P. 11 Wheat. 209, 210, 211 ; 7 Peters 98 ; 2 Binn. 168; 12 Serg. and Rawle 103 ; unless the defect in the record is one which could not have been cured, or amended in the court below, if the objection had been made before it was removed. 4 J. R. 602; 14 J. R. 560 ; 16 J. R. 353 ; 18 J. R. 558, 559 ; 2 Dow. P. C. 72. The names and judicial reputation of the American jurists, who have ever acted on this rule, and of lords Eldon and Redesdale, may with propriety be referred to, and invoked in support of a dissenting judge; and the rules and decisions of this court, till' this time, may also be called to his. aid.
.Had the present appellants demurred to the bill, objected in the pleadings, of at the.hearing, on the ground now taken, *536 the defect, if any, would have been cured in the court below, by an amepdment without affecting the proceedings; but here, it would seem, that there can be no amendment ordered without annulling every thing befetofore done in .the cause.
• If it was so intended by the appellants, they have deláyed this objection ipost profitably for the purposes of vexation ; it has been received under' circumstances which would have prevented it being listened to in any other appellate court, but which have entitled it to favour here. It is not made by the respondent, whom alone-it concerned to reverse erroneous proceedings by the appellants, who were complainants, against him; if he chooses to waive defects in their petition, 'they could not be injured thereby, they did not ask for an amendment in theirs, or the petition of the party who obtained a decree in his favour: The appellants asked a reversal and a decree in their favour; they have obtained a. reversal indeed, but it is of every step they have taken to submit their rights to the final adjudication of this court; the cause is open to indefinite litigation, by each of the three hundred claimants to the fund in the hands of the executor, as well as those now ordered to' be added to the suit, who may be not the least troublesome, at least to the appellants. A principle, too, has been established,-by which each claimant is permitted during the five years allowed for appeal after, a final decree, to reserve his objection to the pleadings till a .convenient time, and then obtain reversals on a summary motion, for defects that are amendable on application in the discretion of the circuit court, by the general rules of courts of equity and law, and by right, under the provisions of the judiciary act.
There can be no course so utterly subversive of equity, nay, of common justice, as to hear parties in an appellate court, on points made under circumstances like the present; it is one to which I caq never consen)t, and against which I shall deem it a duty to suitors to • protest on all similar occasions. I will never, while, sitting in this court, reverse a decree upon objections which a court of chancery or exchequer, on a cause regularly before them, would not in the exercise of their original jurisdiction; or the- house of lords or the court of errors and /appeals in New York would not permit counsel to argue on appeal. Nor will I ” in any way admit, that any appellate *537 court can, in the legitimate exercise of their jurisdiction, render a judgment of reversal on any ground, on which tiiey would not be bound to hear ari argument of'counsel. It is a gieat hardship on parties, to have their judgments set a side, on technical objections raised at the bar; but the grievance will' become intolerable, if the course of the court should be such as to do it when they are first suggested from the bench.
Lét an objection like the present, however, come whence it may, I consider it as purely technical; which I cannot sustain consistently with the respect due to the solemn and unanimous decisions of this court in-Harding v. Handy, and Renner v. The Bank of Columbia, with many others, founded on the most immutable maxims of the law. They settle the rule, that the conclusion of fact drawn from a circumstantial averment, is sufficient to support a decree in equity; and forbid me from disregarding the evidence which has .been admitted wilhput objection and now forms part of the record before me for judicial inspection, merely because the subject matter of that evidence was not averred in the bill or petitions of the claimants. . And when to this high and unquestioned authority is- added, the 32d rule of this court, I.find safe rules for my guide, which would be violated, by aiiy sanction given to any proceeding in opposition thereto. That rule is, “ in .all cases in equity, &c., no objection shall hereafter be allowed to the admissibility of any deposition, deed, grant, or Other exhibit, found in the record as evidence, unless objection was taken in . the- court below and entered of .record, but the shme. shall otherwise be deemed to have.been admitted-by consent.” I feel bound to. examine all.the evidence, in this 'record, as it is found without ail objection; and as counsel and parties are precluded from how making any, it is my duty to give it its full effect on the question of domicil, as well as any other which may be relevant to the cause ; any other course, would, in my opinion, annul this rule, which counsel must respect, and which I had thought the court would adhere to,'by hearing an argument on a point arising on the, evidence,, made by the counsel of the appellants in the brief presented for our judicial action.
The order for the admission of new parties deserves some notice on account of the manner in tvliich it was made, which *538 is bélieved tó be unprecedented.,. Their names were not m the record, they were in no way before the court, but- had, employed counsel, w'ho were desirous of being heard as amici curia, in order to point out some irregularities which, as they conceited,-would authorize the reversal-of the decree, so-as to permit the'm to make an application to become parties; stating at the same time, that the circuit court had very properly refused such application by a bill of review. This court, promptly and unanimously refused to hear them in support of their motion, yet-have granted what they would not.permit to be moved for by the counsel of the new parties, and of course without motion; for the counsel of the appellants who signed the brief as representing three individuals and others, on being called on by the counsel for the appellees in open court to state for. whom they appeared, declined an answer. ’ In the circuit court it may not be within the line of duty to inquire, by. what authority, and on whose application, these parties have been ordered -to be admitted as litigants in the cause ; so far .as respects one of the judges, he will obey, the mandate. But in this court he may, and does make the inquiry respectfully, but .as a matter of right, and fearlessly insists, that it. has been doné in yiolation of the best established principles of the law of appellate courts. As the court would not hear the motion of the counsel of these parties, they could not be judicially informed that they desired admission into the cause; a fortiori they could not judicially decide, whether their case was one. which gave them a right to admission. Their judgment and mandate have therefore been given on extrajudicial knowledge, such as no appellate cottrt can receive or act - upon', as it was wholly dehors the record, and related to no party to the appeal, or any thing appealed from.
In issuing their order, founded, on such knowledge as they chose to receive, the court must have taken a verypa’rtial view of the papers presented to them for their collateral inspection; had they been judicially examined, or their contents known, it would have been apparent that the case deserved some deliberation at least. By their own admission, these parties had full knowledge, that the fund they claimed, was in the hands' of the executor in Pennsylvania, yet their first application to be admitted as parties to this suit, was ten years after the death of *539 the testator, and nearly six months after the' final decree. That after the failure of their petition for a bill of review, they had filed theiroriginal bill in the circuit court, having previously applied to the orphan’s- court of Philadelphia county ■( which is a court of equity and of record, before whom the administration account was in a course of settlement') for an order of distribution in their favour.
This court also knew judicially, for it appeared in the answer of the executor in.this case, that he had interpleaded and prayed the protection of the court; for which purpose they had .made, an order (also in the record) that all claimants of the fund who did not appear by a given day and present their claims, should be barred thereafterwhich order was sanctioned by the practice and rules .of all courts of equity. These parties suffered the time to elapse long before they thought proper to make any claim, without in any waydenyirig notice of the pendency of the suit; or accounting for their'delay in applying to become parties before the- final decree.
If any court could be justified in admitting them afterwards in a case circumstanced like this, it most1 assuredly could be only .by the exercise of original jurisdiction, by bill of review, and not by any appellate power over this record; these parties were not and eould not be appellants from a final decree to Which they.were not party nor privy; nor could this court lawfully reverse the decree on new matter, or for. any cause appropriate to a bill of review.- As to these persons, there was no case in this court; it could have no appellate jurisdiction to hear and determine on any-thing ; and the proceeding was wholly coram non judice, unless it could exercise original jurisdiction over the parties and the subject matter, as a case originating in this court.
Thus .considered, I feel it a, duty to declare that the mandate to the circuit court, ordering tln.se persons to be made . parties, is without any authority of - principle or precedent, and although I shall obey it in that-court as the command of a copxt of the last resort, yet in my best judgment, feel constrained to pronounce it inconsistent with the best established. rules and usages of law, and a violation of the constitution of an appellate court.
*540 This cause came on to be heard on the transcript of the record from the circuit court of the United States for the district of Pennsylvania, and wac argued by counsel; on consideration whereof, it is ordered, adjudged and decreed, that the decree of the said circuit court in the premises be, and hereby is reversed and annulled, and that-the cause be: remanded to the said circuit court for further proceedings; with directions to the said court to allow the bill and the petitions of the claimants to be amended, and the answers and pleadings also to be amended to conform thereto, and proofs to the new matter also to be taken ; and with further directions to allow any other person or persons, not now parties to the proceedings, who shall claim title to the funds in controversy as heir or heirs at law or representatives of the testator; to present their claims respectively before the said court, and to make due proofs thereof and to become parties to the proceedings, for the due establishment and adjudication thereof. But the proofs already taken in'thp cause are to be^deemed admissible evidence in regard to all such persons, not now parties, who shall claim title as aforesaid, and become parties in the cause under this order ; and such other proceedings are to be bad in the said cause by the said\court, as to law,, equity and justice shall appertain.