Nov. Term,
1850.
RUSSELL
v.
METZGAR.

---

RUSSELL *v.* METZGAR, Administrator of TOLBERT.

Assumpsit by the administrator of *A.* against *B.* The following facts were proved: *C.* mortgaged to *B.* a tract of land to secure the latter as indorser upon a note for 2,500 dollars, and also to secure a debt of 1,600 dollars which the former owed the latter. The note was indorsed by *B.*, *A.*, and *D.* Subsequently *C.* mortgaged to these three persons personal property to secure them as such indorsers. *E.* took out an execution against *C.* on a judgment older than the mortgage to *B.* The agent of *B.* called upon *A.* and *D.* and it was agreed that they should contribute a sum sufficient to pay off the judgment of *E.*, and thus preserve the mortgaged premises. *A.* advanced 377 dollars and *D.* 100 dollars. *B.* offered to prove that he advanced 84 dollars, which was objected to and objection sustained. *A.* received the obligation of *B.*, by which the latter promised that if he should hold the mortgaged property, the proceeds thereof, either from rents or sale, should first be applied to refunding the sum so advanced. *B.* realized 1,918 dollars from the sale of the personal property, which fell short of the necessary amount to take up the note 471 dollars, which he advanced and paid off the note. Subsequently *B.* had the mortgage on the land foreclosed, a decree rendered in his favor for 2,970 dollars, and became the purchaser of the land for 1,250 dollars. Verdict for the plaintiff and judgment for 395 dollars. *Held*, that if the mortgage was intended for the benefit of all the indorsers, it did not follow that *B.* did not become a purchaser at the sale on his individual account.

*Held*, also, that the sum advanced by *A.* to pay off the judgment of *E.* must be regarded as a loan to *B.*

Nov. Term,
1850.

RUSSELL
v.
METZGAR.

It was contended that *B.* had a right to apply the purchase-money due by him to his individual debts. *Held,* that, as a general rule, if the debtor does not direct the application, the creditor may, but it is too late for either party to claim the right to make such application after the controversy has arisen.

If neither party, before a trial in which the question is involved, have made the application, or manifested any intention to do so, it devolves upon the law or the Court to make it; and in the case of the proceeds of judicial sales the rule appears to be that they will be applied *pro rata* to the debts for which the sales are made.

Monday,
December 2.

ERROR to the *Vermillion* Circuit Court.

SMITH J.—Assumpsit by *Metzgar,* administrator of *Tolbert,* against *Russell.*

The declaration contains five counts.

The first count alleges that, on the 13th of *December* 1839, one *George Robinson* mortgaged to *Russell* a certain tract of land, to secure the latter as indorser upon a note for 2,500 dollars, made by the former; that on the 27th of *January,* 1841, *Tolbert* advanced to *Russell,* at his request, 377 dollars to be applied to the payment of an execution, which had issued upon a judgment against *Robinson,* older than the mortgage, and which was about to be levied upon the mortgaged premises; and that, in consideration of this advance, *Russell* promised *Tolbert,* that if he should hold the mortgaged property, the proceeds thereof, whether from rents or sale, should first be applied to the payment of the sum so advanced by *Tolbert.* It is then averred that *Russell* did hold the property; that he received a large amount of proceeds by sale, &c.; and that he has not appropriated, but has refused to appropriate, any part thereof to the payment of *Tolbert's* debt.

The second and fourth counts are substantially similar to the first.

The third count is also similar to the first, except that it avers that *Russell* became the purchaser on a foreclosure and sale under the mortgage, by which sale the mortgagee was entitled to a credit of 1,250 dollars, which amount was realized by *Russell;* and that the latter afterwards sold the mortgaged premises, thus purchased by him, for 1,000 dollars.

There is a fifth count, to which a demurrer was sustained and which it is unnecessary to notice.

*Russell* pleaded the general issue, and two pleas alleging an indebtedness of the plaintiff to him under the common counts, by way of set-off.

The issues were submitted to a jury, who returned a verdict for the plaintiff, and judgment was rendered in his favor for 395 dollars.

The proof was substantially as follows:

On the 13th of *December*, 1839, *Robinson* mortgaged to *Russell* a tract of land to secure the latter as indorser upon a note for 2,500 dollars, drawn by *Robinson* and discounted at the branch of the *State Bank of Indiana*, at *Terre Haute*, for *Robinson's* benefit, and also to secure a debt of 1,600 dollars which *Robinson* owed *Russell*. The note was intended to be renewed from time to time according to the usage and customs of the bank, and *Robinson* was to have the use of *Russell's* name as a standing indorser until it was paid.

The note above mentioned appears to have been indorsed by *Russell*, *Tolbert*, and *Boyd;* and, on the 12th of *September*, 1840, *Robinson* mortgaged to all these three persons certain personal property to secure them as such indorsers.

One witness testified to an admission by *Russell*, in a conversation with the plaintiff relative to a settlement of the matters in dispute between them, that he, (*Russell*,) had received 1,000 dollars of the money obtained from the bank on the discount of the note.

Another witness testified to an admission by *Tolbert*, that 1,000 dollars of the money so obtained had been applied to the payment of a note of *Robinson's* for that amount on which *Tolbert* and the witness were indorsers.

In *January*, 1841, one *Brier* took out an execution against *Robinson* on a judgment older than the mortgage to *Russell*. The latter was then absent from home, and fearing that a sale under the judgment would destroy his lien upon the tract of land mortgaged to him, he wrote to his agent requesting him to do the best he could to pre-

vent such a result. The agent accordingly called upon *Tolbert* and *Boyd*, the other indorsers upon the note, and counseled them as to the measures it would be advisable to take to secure the property mortgaged for the purpose of making the bank debt. It was thereupon agreed that they should contribute a sufficient sum to pay off the *Brier* judgment. *Tolbert* according advanced 377 dollars and *Boyd* 100 dollars for that purpose. These advances were made to preserve the mortgaged property for the payment of the bank debt. It was believed at that time that the property was worth 2,500 dollars. *Russell* offered to prove that he advanced 84 dollars, being the balance requisite to pay off said judgment, but the plaintiff objected to the admission of evidence to that effect, and the objection was sustained. With those sums *Russell* 'paid off the judgment. Upon the advance of the sum above mentioned by *Tolbert*, he received the following paper:

" Received, *January* 27th, 1841, of *Horatio Tolbert*, 377 dollars towards paying a judgment on which execution has issued against the property of *George Robinson*, and which property is secured to me by mortgage; and I hereby obligate myself that if I should hold the property under the said mortgage, that the proceeds of said property, whether in rents or from sale, shall first be applied to the refunding the amount so advanced and received by me.

" *John Russell*, by *M. Gookins*, attorney in fact."

*Russell* realized 1,918 dollars by a sale of the personal property mortgaged to the indorsers, which fell short of the amount necessary to take up the note 741 dollars. That sum he advanced, and paid off the note in *May* or *June*, 1841.

At the *February* term of the Circuit Court, in 1841, he filed a bill to foreclose the mortgage of the tract of land. In this bill he alleged that the debt of 1,600 dollars due him from *Robinson* remained unpaid; that he had been compelled to assume the payment of the whole of the note discounted, which, with the costs and charges, then amounted to 3,000 dollars; that he had paid 2,800 dollars of said sum, and was liable to the bank for the resi-

due, and that, with the view of preserving his lien, he had paid off the *Brier* judgment. He obtained a decree for the payment to him of 2,970 dollars and 69 cents, and for a sale of the mortgaged premises in case default should be made in such payment. At a sale by the sheriff under this decree, he became the purchaser of the mortgaged property at the price of 1,250 dollars.

A deed was exhibited, by which it appeared that *Russell*, afterwards, in *December*, 1845, conveyed the tract of land so purchased by him to one *Ingle* for 400 dollars. Mr. *Gookins* testified that the property was worth no more at that time, and that a larger sum could not have been obtained for it. He also testified that *Robinson* and *Boyd* had both become insolvent, and had left the state; and that *Robinson* was largely indebted to *Russell*.

The evidence being concluded, the Court gave the following instruction, to which the defendant excepted:

" That if they believed that the sum mentioned in the instrument declared on was a loan to *Russell* by the plaintiff's intestate, to relieve the property mortgaged to him by *Robinson* from the outstanding lien of *Brier's* judgment, the plaintiff is entitled to recover in this action; but the jury has the right, from the evidence introduced, and upon all the circumstances of the case, to consider whether the loan was made to the defendant individually, or to him as trustee for the indorsers of the bill of exchange, of whom the intestate was one; and that if they believed it was to him as trustee for the benefit of all the indorsers, the intestate being one, and the mortgage to *Russell* by *Robinson*, although taken in *Russell's* own name, being for the benefit of all the indorsers of *Robinson's* bill, the intestate included, then the defendant is entitled to any set-off he may have proved as payment on the bill, for taxes on the property mortgaged, and costs and expenses in foreclosing the mortgage; and these are proper considerations for the jury."

The counsel for the plaintiff in error contend:

1st. That to sustain the action, under the general issue, it was necessary that the plaintiff should have proved the

Nov. Term,
1850.
_____
RUSSELL
v.
METZGAR.

mortgage set out in his declaration, and the bill of exceptions shows there was no legal evidence of such a mortgage;

2d. The mortgage, if there was one, was intended as much for the benefit of *Tolbert* and *Boyd* as for that of *Russell*, and *Brier's* judgment was paid off equally for the benefit of all;

3d. The first branch of the instruction was erroneous, because it gave the jury to understand that the plaintiff had a right to their verdict, whether the plaintiff had proved the mortgage or not, or whether *Russell* held the property under the mortgage or not, or had realized anything from the sale, or had proved a set-off, though the instrument upon which the suit was founded made these things conditions precedent to the plaintiff's right to recover;

4th. The last branch of the instruction was erroneous, because the defendant was entitled to a set-off, whether the transactions alluded to were with him individually or as trustee. If the evidence shows that *Tolbert*, *Russell*, and *Boyd* indorsed the bill as joint sureties of *Robinson*, *Russell* had a recourse on *Tolbert* for one-third of the amount paid by him;

5th. The Court erred in excluding evidence relative to a mechanic's lien on certain machinery, being a part of the property mortgaged by *Robinson* to *Russell;*

6th. The Court erred in excluding evidence of the payment of 84 dollars by *Russell*, to complete the satisfaction of *Brier's* judgment.

The bill of exceptions states that the plaintiff introduced the mortgage from *Robinson* to *Russell*, and the final record of the proceedings in chancery to foreclose said mortgage, to-wit: then follows the record setting out a bill in chancery with the exhibits, one of which is the mortgage in question. It does not very clearly appear whether the original mortgage was introduced or not, but as no objection was made at the time to the mode of proof, we think that if only a copy set out in the record was thus read, the existence of the mortgage was sufficiently proved.

We also think that, upon the evidence, the judgment is right, and that the defendant had no grounds to complain of the instruction.

It is sufficiently proved that *Russell* did become the holder of the mortgaged property, and did receive proceeds from it more than sufficient to pay the sum advanced by *Tolbert*. The evidence is, that he paid the bill of exchange with 1,918 dollars, received from the sale of the personal property mortgaged to the indorsers, and 741 dollars of other funds; and that he purchased the tract of land at a sheriff's sale for 1,250 dollars. He must, therefore, be charged with the receipt of the latter amount as proceeds of the tract of land mortgaged; for, though there is evidence that in 1845, some four years after his purchase, he sold the same land for 400 dollars, there is none that he purchased it in trust for the benefit of all *Robinson's* indorsers, or that at the time of the sheriff's sale it was not worth the amount of his bid. If the mortgage was intended for the benefit of all the indorsers, it does not necessarily follow that *Russell* could not become purchaser at the sale on his individual account.

We think also that the sum advanced by *Tolbert* to pay off the *Brier* judgment, should be regarded as a loan to *Russell* for that purpose, though all the indorsers were equally interested in having that judgment paid, because it was so stipulated by the parties at the time, and because they did not all equally contribute to the necessary sum.

The point which seems to present the most difficulty in the case is, whether *Russell* has proved any claim against *Tolbert* which he is entitled to set-off against the plaintiff's demand. The indorsers being all joint sureties for the accommodation of *Robinson*, if *Russell* was obliged to pay the debt or any part of it with his own proper funds, he has a right to contribution from his co-sureties; and the proportion he is entitled to from *Tolbert* would constitute a proper matter of set-off in this, suit. If, however, he received from the proceeds of the land mortgaged to him, a sufficient sum to pay the sums advanced

by *Tolbert* and *Boyd* to relieve the mortgaged property from the *Brier* judgment, and also to cover the sum of 741 dollars advanced by him in addition to the 1,918 dollars made by the sale of the personal property, and he should be considered as having so applied, or as bound so to apply the sum in his hands or due by him as purchaser at the sale under the mortgage, it is clear he can have no right of contribution against his co-sureties. The whole debt must, in that case, be regarded as paid out of the property of the principal, mortgaged for that purpose.

It is contended by his counsel that he had the right to apply the purchase-money due by him to his individual debts, which the mortgage was intended to secure equally with the debt arising from the note on which he was indorser with *Tolbert* and *Boyd;* and that he is to be regarded as having so applied it, or as having manifested his intention so to do by his plea of set-off in this suit, which is in the nature of an action for contribution.

The general rule is, that if the debtor do not direct the application the creditor may; but it is too late for either party to claim a right to make such application after the controversy has arisen. *United States* v. *Kirkpatrick,* 9 Wheat., 720.—*Backhouse* v. *Patton,* 5 Peters, 160. If neither party, before a trial in which the question is involved, have made the application, or manifested any intention to do so, it devolves upon the law or the Court to make it; and in the case of the proceeds of judicial sales, the rule appears to be, that they will be applied, *pro rata,* to the debts, for which the sales are made. Amer. L. Cas. 147, n. (3) 156.—9 U. S. Dig. 360, Tit. *Payments.*

But in this case the *Brier* judgment was paid off principally with the money of *Tolbert* and *Boyd,* for the express purpose of preserving the mortgaged property, to make the debt due to the bank; and they advanced their money for that purpose on the representations and advice of the attorney and agent of *Russell.* They could have had no object in doing so but upon the supposition that the

Nov. Term,
1850.

RUSSELL
v.
METZGAR.

property was of greater value than the amount of the *Brier* judgment, and that, after satisfying that debt, which was the first lien, the surplus would be applied to the payment of the note on which they were indorsers. After the property had thus been preserved through their means and at *Russell's* request, we think he should be held bound in good faith so to apply the proceeds.

Besides, it does not clearly appear that there was any individual debt secured by the mortgage, and unpaid at the time of foreclosure, to which he could have applied those proceeds. In his bill filed to foreclose the mortgage, he claims an individual debt of 1,600 dollars—2,800 dollars paid on the note in Bank, and about 550 dollars which he had paid to extinguish the *Brier* judgment. The decree was for 2,970 dollars, without specifying how that sum was made up; and it is left uncertain which of these debts or what portion of them remained unpaid when the decree was rendered. The only other evidence on this subject is, that he received 1,000 dollars from *Robinson* at the time the note was discounted; which, it may be supposed, went to diminish his individual debts.

It is said by his counsel that *Russell*, by showing that he paid the bank debt with the proceeds of the personal property and 741 dollars of other funds, made out a *prima facie* case against *Tolbert* for contribution. But the presumption thus arising that he had paid that sum with his own money, is rebutted by the proof that he had in his hands a fund equal in amount, arising from the sale of the property mortgaged by *Robinson*, which he could and ought to have applied to the payment of the balance due on the note.

During the trial the defendant offered to introduce, in evidence, a bill in chancery filed by *Phillips* and *Barnes*, to enforce a mechanic's lien for work and materials furnished in the construction of certain machinery erected on the mortgaged premises, together with the proceedings in the suit thus instituted, which proceedings were still pending in the Circuit Court of *Vermillion* county, for the purpose of showing that the said property was in dispute,

and that *Russell* could not sell it pending such proceed‑ ings. This evidence was excluded by the Court on the motion of the plaintiff. These proceedings are not set out in the record of the present suit, and this Court can‑ not say the Circuit Court erred in rejecting them. We are not informed as to the date or amount of the lien, and the proceedings may have been wholly irrelevant.

*Per Curiam.*—The judgment is affirmed with 2 *per cent.* damages and costs.

*W. P. Bryant, J. A. Wright, S. F. Maxwell,* and *C. Dewey,* for the plaintiff.

*C. W. Barbour,* for the defendant.