*107
 
 McLean, Justice,
 

 delivered the opinion of the court. — This cause is brought before the court on a certificate of a division of opinion, in the circuit court of the United States for the eastern district of Virginia. The question presented for decision relates to the application of certain payments made by Patton, one of the defendants. The facts in the case are, substantially, as follows :
 

 James Hunter, by his last will, devised his estate, real and *personal, to certain relatives, subject to* the payment of his debts. Patrick Home, one of the devisees and executors, being the surviving executor named in the will, having taken upon himself the execution of it, sold a part of the real estate to one Dunbar. The complainants, creditors of Hunter, brought their suit in the circuit court against Home, as executor and devisee, and against others, to set aside the sale to Dunbar, and obtain satisfaction of their debts. After having answered, Home died, in the spring of 1803 ; and administration
 
 de bonis non,
 
 on Hunter’s estate, was granted to Patton. Being made defendant, he filed his answer in 1803, and a decree was made, appointing him, John Minor, and another, commissioners, to sell, on twelve months’ credit, the unsold lands of Hunter, and to hold the proceeds subject to the order of the court*. As administrator, Patton received personal property to a considerable amount; and in June 1803, sold such part of it as was salable, on a credit of twelve months. The remaining lands of Hunter’s estate, he and Minor, acting as the commissioners of the court, sold on the same credit, in December 1803. In the progress of the cause, an amended bill was filed by the complainants, waiving all objections to Dunbar’s purchase.
 

 Patton, as commissioner, in 1813, reported a balance on the administration account of about 3312Í., including interest. On this,report, in June 1815, the. court directed payment by Patton and Minor, as commissioners, of one dollar in the pound to the creditors named ; and on the 3d of December following, ordered a provisio.-.al payment to the complainants to be made out of the moneys in the hands of Patton, as administrator, if any he hath, and that he and Minor, as commissioners, do pay, &c. This decree seems not to have been acted on. On the 12th of June 1820, the claims of the complainants having been established, the court, with a view, as expressed, to put them on an equality with the creditors named in the decree of 1815, ordered, “ that out of the funds of the estate of James Hunter, at the disposition of the court, *Robert Patton, one of the commissioners, and ..^ administrator de
 
 bonis non,
 
 do pay the sum of $23,322.56.” This sum *- was paid. The decree of 1820 having directed a further account, it was taken, and the sums in the hands of Patton, as commissioner and administrator, were stated. After the correction of various errors by the court, in the reports made, it was ascertained, in 1821, that after jjaying the sum of $23,322.56, there was still a balance in the hands of Patton of 6040Í. 4s. 4
 
 d.;
 
 and the court decreed, that he should pay that sum to the creditors of the estate, as administrator, and as one of the commissioners of the court.
 

 Patton had given security as administrator, but none as commissioner. To make the securities liable, he being insolvent, a supplemental bill was filed against them, and by the answer of one of them, the question of liability is raised. The point presented for consideration is, whether the payment shall first be applied to the credit of the administration fund, or
 
 *108
 
 ratably to both funds? If the payment shall be decided to Lj.ve been made out of the administration fund, the sureties are discharged ; as the sum paid ■was greater than the amount Patton held in his hand as administrator. The payment also exceeded the sum he held as commissioner, though this fund was larger than the other. It is earnestly contended, in the learned and able argument in writing submitted to the court by the defendants’ counsel, that the administration fund must first be exhausted. To determine the question raised, it is not important to ascertain the precise sum which Patton held in his hands in each capacity; as the amount paid exceeded his liability in either.
 

 In Virginia, the moneys arising from the sale of personal property are called legal assets, in the hands of an executor or administrator; and those which arise from the sale of real property are denominated equitable assets. By the law, the executor or administrator is required, out of the legal assets, *t0 Pay cre<lifors of the estate, accord'ng to the dignity of their I demands; but the equitable assets' are applied equally to all the creditors, in proportion to their claims. The payment was made under the decree of 1820 ; and if the court did not direct specifically in what manner the two funds should be applied, it is contended, that Patton had a right himself to determine ; and consequently, by applying first the legal assets, to discharge his sureties. If the correctness of this argument were admitted, it would still be important to show, that the payment was made by Patton, as administrator. This fact might be established by an unequivocal act, or by circumstances.
 

 This is clearly not a case in which the creditor may apply the payment, no specific directions having been given by the debtor. -To each of the creditors, there was but one debt due, on which the payment was made ; it could, therefore, be applied only to the payment of such debt. Had debts of different dignities been due to each creditor, and no specific application of the payment had been directed by Patton, and the creditor had applied it' by some unequivocal act, his right to do so would not, perhaps, be questioned. Whether the application must be made by the creditor, at the time the money is received, or within a reasonable time afterwards, it can be of no importance in this case to inquire. There may be cases, where no indication having been given, as to the application of the payment by the debtor or creditor, the law will make it. But it cannot be admitted, that in such cases, the payment will be uniformly applied to the extinguishment of a debt of the highest dignity. That there are authorities which favor such an application is true, but they have been controverted by other adjudications.
 

 From the terms of the decree of December 1815, the court undoubtedly intended, that the legal assets should first be applied in making the payments
 
 directed;
 
 and then the equitable assets. But no such direction is given in the decree of 1820. The payment is directed to be made out of both funds in the hands of Patton, without any indication that either should *ifcn bust applied in preference to the other. *If, in making the pay-
 
 ‘
 
 ment, Patton could exercise his discretion, in first applying the legal assets, has he afforded any evidence of having done so ? Has he, by any entry .in his accounts, or by a return to the court, or in any other manner, shown a special application of the money ? Within what time, was it necessary for him to make his election ? His intention is attempted, to be adduced
 
 *109
 
 from his interest, aided by the principles of law referred to. As administrator, it is said, he was responsible for the funds in his hands, by various modes of proceeding, summary in their character; and from this, it is inferred, that he intended to relieve himself from such a responsibility. To ■ relieve his securities, it is urged, must have formed an additional motive, to which might be superadded, the oath he had taken as administrator. But, on the other hand, it may be urged, that the motives were not less strong; as commissioner, if unfaithful to his trust, he was subject to the penalties which a court of chancery might impose. It would seem, therefore, that the circumstances of the ease do not authorize an inference that any determination was made by Patton on the subject.
 

 When, in 1821, the decree was rendered against him, as administrator and as commissioner, for the payment of the balance which appeared to be in his hands, no objection seems to have been made to the decree. It could not have been entered, without giving a construction to the decree of 1820 ; for if the $23,322.56 had been paid, by first applying the legal assets, the decree of 1821 must have directed the balance to be paid as commissioner. This decree, therefore, goes very strongly to show in what light the above ' payment was considered by the court and the administrator. Can it be supposed, that when the decree of 1821 was about being entered against Patton, holding him responsible in both capacities, that he would have remained silent, if his liability as administrator had ceased ? The rendition of this decree must clearly refute any presumption, attempted to be raised either from the facts or circumstances of the case, that the legal assets were considered as having been first applied by the administrator in making the payment.
 

 *Having had a reasonable time to make his election, is it not too late to do so, after the controversy has arisen ? And is it competent for the sureties of the administrator, to exonerate themselves from responsibility, by attempting to give a construction to his acts, which seems not to have been given by himself ? They first raise the question as to the fund out of which the payment was made. If, then, Patton did no act which showed an intention to apply first the legal assets, in making the payment ; and if it was not the right of the creditor to make the application ; does the law make it, as contended for, under all the circumstances of the case? Had Patton made the application, a question might have been raised, whether it was competent for him to do so.
 

 Jurisdiction over the legal fund was assumed by a court of chancery. It was for that court, by its decree, to make the application of the fund as ■ the law required ; and having done so, the administrator could
 
 exercise
 
 no,! discretion over it. The same may be said as to the priorities of the claims ‘ set up by the complainants, and established by a decree of the court. That the administrator was limited in making payment, by the terms of the ' decree, will not be denied. It was not for him to pay more in the pound than was directed, nor to give a preference to one of the claims over another, on account of its higher dignity. The decree placed them on an equality, as to the payment ; and this was clearly within the province of the court, the estate of Hunter being insolvent. The entire fund, in the hands of Patton, was subject to the distribution of the court. That part of the fund which,
 
 *110
 
 in the hands of the administrator, constituted legal assets, and under the law, was directed to be applied in a special manner to the extinguishment of debts, was taken from his control by the court of chancery. The fund was 1 applied by the court, and not by the. administrator. His official capacity was only noticed, to ascertain the extent of his responsibility, and the payment was directed accordingly. He had no discretion to exercise, no rule to observe, but that which the decree laid down. As administrator and commissioner, he was directed to make the payment, because in these capacities, he had received an amount greater than the sum directed to be paid. The payment was made in pursuance of the decree.
 

 ^Suppose, Patton, as commissioner, had given sureties, who were now before the court, and objecting to the application of the money as contended for. This would present a question between sureties. The insolvency of their principal renders á loss inevitable, and the inquiry would be, how shall this loss be sustained? Under such circumstances, could any substantial reason be given, why the sureties to the administration bond should be exonerated, in preference to the others ? No distinguishing quality exists, either in the fund as it now stands, or the debts to be paid, to determine this preference. It is not found in the act of Patton, if his discretion might have been exorcised on the subject. The law has fixed no rule applicable to the case. By the decree, both funds are placed on an equality ; payment is directed to be made from both. Although Patton gave no security as commissioner, yet the question, in principle, is the same. A loss must be sustained, and by whom shall it be borne ? The sureties on the administration bond, as has been shown, cannot claim an exemption from responsibility, under the payment made in pursuance of the decree ; nor can the creditors escape a portion of the loss.
 

 If this were a question of responsibility between sureties, under the decree of the court, the payment would be considered as having been made from each fund, in the hands of Patton, in proportion to its amount. This rule will apply, with the same justice, to the parties interested, under the circumstances of this case. Indeed, it would seem, that no other construction could be given, with equal propriety, to the decree of the court. It is consonant to the principles of justice, and within the equitable powers of the court. On a view of the facts and circumstances of this case, the court think, that the payment of $23,322.56 should be deducted ratably from each of the funds in the hands of Patton, at the time it was made.
 

 This cause came on to be heard, on the transcript of the *record from the circuit court of the United States for the eastern district of Virginia, and on the questions and points on which the judges of the said circuit court were opposed in opinion, and which were certified to this court for its opinion, in pursuance of the act of congress for that purpose made and provided, and was argued by counsel: On consideration whereof, it is the opinion of this coui-t, that the payment of $23,322.56 should be deducted ratably from each of the funds in the hands of Patton, at the time the decree of the 12th day of June, in the year of our Lord 1820, was made. Whereupon, it is ordered and decreed by this court to be certified to the judges of the said circuit court for the eastern district of Virginia, that the
 
 *111
 
 payment of $23,322.56 should be deducted ratably from each of the funds in the hands of Patton, at the time the decree of the 12th day of June, in the year of our Lord 1820, was made.