Lipscomb, J.
This cause comes before us on an appeal from the district court for the county of "Victoria. The action was brought by the appellee against the appellant to recover land. The facts of the case, so far as they are thought material to be noticed are these. Sutherland and Menifee sued out an attachment called in common law parlance an original attachment, against the appellees to recover the value of goods wrongfully taken and carried away from them by the appellant. It is said the attachment was sued out under the act of congress of the 18th December, 1837. It was issued by the judge of the district court, his own name being thereunto subscribed, on *(216) the petition of the plaintiffs. It was directed to the sheriff of the county and returned “levied on four leagues of land;” and such proceedings were had, that the plaintiffs in the suit had judgment and execution in their favor. The sheriff, under the execution, sold a portion of the land levied on, and Sutherland, one of the plaintiffs in the attachment, and who is also one of the appellants in this court, became the purchaser and received title from the sheriff for the land that is the subject of controversy in this suit. On the trial the sheriff’s title was offered by the appellants in the defense, and was ruled out by the court; and in this it is contended by the appellants, the court erred.
Several objections were taken to the sheriff’s deed, all baséd on the supposed nullity of the judgment on the attachment; [302] and it seems to be admitted by the appellee, that if that judgment is not absolutely void, its regularity cannot be questioned in a collateral inquiry; that if it is merely voidable and could be reversed for error on appeal, yet so long as it remains unreversed it cannot be questioned. It is res adgudicata. But it is contended that the judgment is void, because the act of congress under which the attachment was sued out is unconstitutional.
The first objection we shall notice, to the constitutionality of‘the act of congress is, that it is ¡partial in its operation, and designed to operate on Mexicans alone, a elass of our citizens entitled to equal privileges with all others.
The authorities referred to and particularly that in 2 Yerger, 599, would certainly sustain the position assumed, if the premises were admitted that it applied to our Mexican citizens alone. But we will inquire if this is a fair construction of the act of congress of the 18th December, 1837. We will here insert the whole of that act; it is in the following words: “Whereas many Mexicans, residing upon our frontier, stole and drove off large herds of cattle, and took and carried off other property belonging to the citizens of the republic: and whereas those Mexicans have abandoned the country and removed beyond the Bio Grande, so that persons from whom they have taken property are wholly without remedy:
Section 1. “ Be it therefore enacted by the senate and house of representatives of the republic of Texas in congress assembled, That in all cases it shall be lawful for any person from whom property was wrongfully taken, to sue out an attachment upon filing an affidavit stating to the best of his or her belief, the value of such property; and to the best of his or her belief, that the same was taken by the person against whom the attachment is prayed; and that the said party *(217) resides out of the jurisdiction of the court so that an action cannot he prosecuted against them; which said attachment may he levied by the sheriff of the proper county upon property both real and personal of the defendant.
Section 2. “ Be it further enacted that upon the return of such attachment, the court shall proceed to the trial of such cause and judgment and execution as in other cases provided for by law.”
If the preamble was substantially carried into the enacting part of the statute, and we should construe it to mean Mexican citizens of Texas, the objection made by the appellee would be presented. But even if the language of the preamble was in the body of the act after the enacting clause, the more reasonable construction would be to refer it to such Mexicans as adhered to the enemy. We will not say that it was not competent for the legislature to provide a remedy for its citizens who had claims for property taken by Mexicans, so running away and adhering to the enemy and who had left property in the country. It seems to us that it would have been within the powers of congress to have appropriated such property to public use, and why not to the payment of the just demands of our citizens, without violating any privilege of the jus helli; would it not in fact be applying it to public use? There is a moral obligation on the part of the government to protect the citizen; it is one of the conditions on which his submission to and support of the government is based; and the citizen has an equitable claim on his government to compensation for spoliation committed on him by the public enemy. Again, confiscation of property for political offenses does not find much favor in modern times; it is supposed by many to belong to a less enlightened age; but sm’ely courtesy for an enemy ought not to be carried so far as to place his property in a better condition than that of an alien friend, who resides beyond the jurisdiction of the court.
But the construction of the act of congress contended for is not correct. The preamble is no part of the act. If the enacting part was ambiguous, as to the meaning of the law-maker, it would be proper to resort to the preamble for the purpose of arriving at the true object intended. But we can never resort to the preamble to control the meaning of the clear language of the statute following the enacting clause. The body of the act makes the remedy general against all persons who had wrongfully taken away property. The preamble only suggests that these Mexican robberies had awakened the legislature to the necessity of providing a remedy; as one or more acts of outrage would be the inducement to providing for another penalty or mode of trial. Again we know no rule of law that would *(218) authorize us to say, that an act of the legislature is unconstitutional unless it be clearly so; and it certainly would be a great abuse of judicial power to invoke the aid of the preamble to render it unconstitutional, when without such aid there could be no such objection. The rule is, to give it that construction that will sustain and not destroy it, if it can be done without subverting the obvious meaning of the language used.
It is further urged that the act is unconstitutional because it gives a remedy by civil process for a felony; and further, that it gives a remedy where there was none before, and is therefore - retrospective. We believe that neither of these conclusions can be deduced by fair construction from the language of the act. In no part of the body of the act is there any reference to. stealing eo nomine, but it gives a remedy for the wrongfully taking away property. We surely will not be required, when the law uses the term wrongful, to say felony is meant, and that, too, a felony of so high a grade as to work a forfeiture; for that class alone would merge the civil remedy; such a construction would be a perversion of the ordinary meaning of words. It was admitted by the counsel for the appellee that it was perfectly competent to change the remedy or to give an additional one, but that .to give one where none before existed would be retrospective'and prohibited by the constitution of Texas. An ex post facto law has been usually-held to apply to criminal proceedings only, and its judicial interpretation is, the making an act, not against law at the time it was done, punishable. It has never been contended that process for punishing an offender, or bringing him to trial for an offense clearly known to the law, cannot be changed or modified. By analogy retrospection, within the meaning of the constitution, would be to give a right where none before existed, and by relation back, to give the party the benefit of it; if, however, the right already existed, it would be in the power of the legislature to devise and provide a -c-remedy. This seems to be a fair construction of that part of the constitution that prohibits the passage of retrospective laws, if applicable to civil cases. If this should not be correct, it is pretty clear that the act of congress under consideration does not give a remedy where there was none before. In argument it was contended that there was no remedy in the case presented for the wrongfully taking away the goods of Menifee and Sutherland, until it was provided for by the act of 183T. This argument is not well founded; the law is believed to be otherwise. When goods have been wrongfully taken and carried away, making the taker a tort feasant, the tort may be waived and suit sustained for the value of the goods. This could *(219) have been done by tbe plaintiff in the attachment under the laws as they were in force before the act of 1837; DeLeon could have been sued for the value of the goods, if he could have been found, in an ordinary action, and by the appointment of a curator if absent. The act then did not give a right or a remedy where none existed before; it only gave an additional or cumulative remedy.
Another ground taken by the counsel for the appellee is, that if the act under which the attachment was sued out is free from objection as to its constitutionality, yet the judgment is a nullity, because the process was signed by the judge and not by the clerk. If the judgment was a nullity and absolutely void, its effect would be binding on no one, and no right could be founded on it. We have said that the act of 1837 cannot be impeached on the ground of its constitutionality, then there can be no question but the court derived from it jurisdiction of the subject-matter; and we will inquire whether the steps required by law were taken to bring that jurisdiction to operate in the case before us. It seems to have been conceded in argument and it certainly is true, that up to the time of the passage of that act there had been no legislation in Texas since the revolution on the subject of attachments; but the ordinance of the provisional government, that introduced on this, subject the code of practice of Louisiana, authorizes the judges of the provisional judiciary to issue writs of sequestration, arrest or attachment, in all cases established by the civil code and code of practice of the state of Louisiana. 7th article of the Plan and Powers of the Provisional Government, adopted 7th November, 1835. And by reference to the code of practice, under the head of attachment in the hands of third persons, will be found in the 239th article the following: “An attachment in the hands of third persons is a mandate which a creditor obtains from a competent judge commanding the seizure of any property, credit or right belonging to his debtor, in whatever hands they may be found, to satisfy the demand which he intends to bring against him.” And article 241 is as follows: “A creditor may in like manner obtain a mandate of seizure against all species of property belonging to his debtor, real or personal.”
From the above reference it seems clear that a judge was authorized to issue an attachment. It is, however, contended that so much of the code of practice as relates to the issuance, of an attachment is controlled and modified by the act of congress of Texas, organizing the district courts. 1 Laws of Texas, p. 201. The seventh section of that act is in the following words: “The style of all process shall be, the republic of Texas, and shall be tested in the .name of the court *(220) from which the same may issue; and the clerk issuing the same shall mark thereon the day on which it shall he issued.” There can be no doubt but the above section refers to such process as may be issued from the district court in the ordinary suits of that court; and not to such process as the judge had been required to issue himself, and it does not relate to a mandamusj arrest and attachment; it was not intended to modify the laws regulating attachment. The authority given by the provisional government to the judges was unimpaired, unless the modification is to be found in the act of 1837.
Another objection taken by the appellee to the validity of the judgment is, that there was no citation served on the defendant or posted up as the law requires. The record does not show affirmatively that a citation was served, nor does it negative the fact of its having been done; a part of the record shows that “the cause came on,” “publication” etc. What was meant by publication is left to presumption, and that would be in favor of the conclusion that publication of the citation had been made in conformity to law; this, at all events, would be the presumption where the judgment is sought to be nullified in a collateral way. But is it essential that a citation should have been issued or served at all, under the provision of the act of 1837? This act, under which the proceedings were had, does not in its terms require it. The first requisite is an affidavit of the value of the property, and to the best of his belief, it was taken by the persons against whom the attachment is prayed; and that the party resides out of the jurisdiction of the court, so that an action cannot be brought against him. This affidavit authorizes an attachment to be issued and levied by the sheriff of the proper county upon' the property, both real and personal, of the defendant. The affidavit is all that is necessary to support the attachment, and the sheriff is directed to make the levy; not a word is found in the statute about anything else to be done, in the commencement of the proceedings. Indeed, it would appear to be an idle form in a proceeding strictly in rem, as this was, against a non-resident on whom there could be no personal service, to have required a citation, and a copy of the process to have been posted at the door of the parish church. It is worthy of remark that in the subsequent legislation in this country, on the subject of attachment, in the act of congress of 1841, when a citation or notice is required to be published in cases of non-residents, the same act authorizes the judgment to be entered for the amount of the debt established; and execution to run against all of the property of the defendant. Prior to that act no citation was required, and it is believed that until then the attachment was strictly in rem, and the *(221) judgment on it could only bind and operate on tbe property levied on.
The second section of the act requires that on the return of the attachment, the court shall proceed to the trial of such cases and judgment and execution as in other oases provided for by law. Is it anything more than a fair and reasonable construction of the law to say that it requires nothing more to be done to bring the case into court, than is fully expressed by the language employed ? After the return of the sheriff, “ levied on the property of the defendant,” the jurisdiction has fully attached, and it becomes a cause in court. Such is the obvious and clear meaning of the law, for when that is. done the second section of the act requires that it shall be tried and judgment and execution as in other cases. We consider it a fair construction of this part of the statute that it means the trial shall be conducted as in other similar cases, and that cases against nonresident defendants shall be within this rule. In the laws of Coalmila and Texas, 265, art. 98, it is provided that “ when the defendant cannot be found or his residence be out of the state, and under circumstances that he cannot soon return, or being cited in the manner mentioned in the preceding articles, he does not reply in the time specified in the citation, or if on any stage of the trial whatever, one of the parties shall not appear when under obligation to do so, the judge, on information and petition of the party interested, shall appoint an attorney ad litem for the party absent, and the trial shall proceed in the same manner as if the party himself were present.”
This law is believed to have been in force in the courts of Texas until it was repealed by the statute of 1839 and 1840, introducing the common law; and it is believed to have been the uniform practice to appoint an attorney, to represent an absent party. The record shows that in the case under consideration, this practice was substantially complied with. If this view of the statute is correct, the judgment so far from being void would not have been voidable] on error or on appeal. We are not now, however, to inquire into the irregularities of the judgment on the attachment; if not void, it cannot-be treated as a nullity, although error may be very apparent on the record; until reversed, it is conclusive of the subject-matter, unless successfully impeached for fraud.
In Voorhees v. The Bank of United States, 10 Pet. 474, the court say that “ the irregularities for which a judgment is not nullified are those which relate to the practice or mode of proceeding in the progress of a cause to judgment.” And again, in the same opinion, *(222) tbe court say, “ in that case there are no provisions of the statute, that if the several acts there directed to be done are omitted, the sale or any other proceeding under the attachment shall be void; and the acts that should have been done were conditions precedent on which this power of the court to proceed depended, but the law did not prescribe what should be deemed evidence of the acts being done or directed that their performance should appear on the record,” And in Grignon et al. v. Astor et ah 2 How. 243, the supreme court of the Hnited States say, when jurisdiction is attached to a subject or exists over a person, this court has adopted a rule applicable to all courts of record, that their decisions are conclusive, “ it has a right to decide every question which arises in a cause, and whether its decision be correct or otherwise, its judgment, until reversed, is binding on every other court.” 5 Pet. 166; 1 id. 340; 11 id. 473.
The principles of the cases- above cited are conclusive of the character of the judgment on the attachment. The act of congress of Texas of 1847 gave jurisdiction of the subject-matter, the property of the defendant, on making the affidavit; the jurisdiction attached on the return of the sheriff of the attachment levied, and jurisdiction having once attached, in the language of the supreme court, the decision is conclusive; an irregularity afterwards could not nullify the judgment. We believe that the true rule of distinction, as established by the concurrent decisions of the most respectable tribunals, between a void and a voidable judgment, is this: Has the court jurisdiction and has that jurisdiction attached? Has the court no jurisdiction or has the jurisdiction not attached? The former would be a judgment not to be questioned by a collateral inquiry; and until reversed, would be binding on all other courts; the latter would be a nullity and could give no right and afford no defense.
In the case before us, we consider the judgment in the attachment was not void, and that the district court erred in treating it as a nullity.
There were many other points presented by the record and insisted on in this court by the appellants’ counsel; but as the view we have taken of the points considered is decisive- of the case, we have not felt called on to dispose of the others.
The judgment of the district court is reversed.
Note. The cause, upon the motion of the appellee’s counsel, was, at a subsequent day of the term, ordered to be remanded for a new trial. e. d.