# WILSON *v.* ALLEN & LEWIS.

PLEADING.—A denial of "any knowledge or information sufficient to form a belief" as to the existence of a particular fact, is a good denial under the civil code.

PAYMENT—APPLICATION OF.—A creditor foreclosing a mortgage on real property given to him to secure the payment generally of several debts, after they become due him from the mortgagor, may, in the absence of any special equities between the parties, and in the event that the proceeds of sale of the mortgaged property are insufficient to satisfy all the debts so secured, apply such proceeds towards the payment of any one or more of such debts in full, leaving the balance unpaid in whole or in part; and a surety of the debtor on such unpaid debts cannot compel a different application of such proceeds.

APPEAL from Linn County.

*Flinn & Chamberlain,* for appellants.

*Weatherford & Blackburn,* for respondent.

This appeal is from a decree on the pleadings, rendered in favor of the plaintiff in the court below, on motion.

The complaint alleges: (1) The execution of a promissory note for $2,486 06, on January 1, 1877, by T. T. Wilson, with the respondent as surety, in favor of Smith, Brassfield & Co., due one day after date; the execution of a second, for $724 76, by John S. Wilson, with T. T. Wilson as surety, on January 1, 1878, due one day after date, to the same firm; the execution of a third note, for $66 25, due one day after date, to the same firm, by T. T. Wilson, on February 3, 1879; and the execution of a mortgage, on the last mentioned date, by T. T. Wilson, on certain real property, in favor of Smith, Brassfield & Co., to secure the payment of all of said notes. (2) The transfer of the property in said notes and mortgage to Hiram Smith and James W. Brassfield, individually, and the foreclosure of the mortgage by them, in equity, and judgments on said notes, with

award of execution for any deficiency after exhausting the proceeds of sale of the mortgaged property. (3) The assignment of said judgment and decree to the appellants, except the attorney fee allowed by the court in the foreclosure suit; the issuance of execution and sale of the mortgaged property for $800, and the application of the entire net proceeds of the sale towards the payment of the amounts which had been adjudged to be due on the second and third notes mentioned. (4) The payment by the respondent upon the judgment on the note executed by him and T. T. Wilson of a sum sufficient to satisfy the amount due thereon, after applying the net proceeds of the sale of the mortgaged property upon the judgments on all three of said notes *pro rata*, and the commencement of a suit in equity by him to compel the appellants to make such an application of such net proceeds of sale; the subsequent vacation of the sale by order of the court, and the re-sale of the premises for a much larger amount, to-wit, $1,800, the net proceeds of which amounted to $1,643 88, and final confirmation of such sale by the court; the dismissal of the first suit to compel a *pro rata* application of the proceeds of sale of the mortgaged property upon said several judgments, and the refusal of the appellants to make such application of the net proceeds arising from the last sale. The present suit was brought to compel such application, and to recover the sum of $260, claimed to be due respondent as an over payment.

The answer denies that appellants "have any knowledge or information sufficient to form a belief" as to whether respondent or T. T. Wilson were only sureties on the first and second notes, respectively, as alleged in the complaint, and alleges that after the re-sale, but not until after the complaint in this suit was filed, the appellants did apply the net proceeds thereof, *pro rata*, upon the amounts then due

thereon and unpaid, which, in the case of the judgment against respondent and T. T. Wilson, appears from the pleadings to have been the balance after deducting the payment made by respondent after the return of the first sale. With the exception of the allegations as to suretyship, the foregoing statements in the complaint and answer are not controverted.

By the Court, Watson, C. J.:

The denial of "any knowledge or information sufficient to form a belief" was a good denial, under the statute, and has been so held by this court. (Civil Code, sec. 713; *Robbins* v. *Baker*, 2 Or., 52; *Sherman* v. *Osborn*, 8 Or., 66.) But the issue thus joined was immaterial. If the respondent was a surety only on the first note secured by the mortgage executed by the principal debtor to Smith, Brassfield & Co., that fact would not of itself entitle him to control the application of the proceeds of sale of the property covered by the mortgage. It is true that considerable diversity and, perhaps, some conflict exist among the authorities upon this point. But those which hold that a surety in the situation of the respondent has no such right, are not only more direct adjudications upon the precise question involved here than the others, which seem to countenance the opposite view, but the doctrine they announce appears consonant with sound legal principles. (*Belcher* v. *Hartford Bank*, 15 Conn., 381; *Stamford Bank* v. *Benedict*, id., 437; *Wilcox* v. *Fairhaven Bank*, 7 Allen, 270; *Mathews* v. *Switzler*, 46 Mo., 301.)

The appellants in this case held all three of the notes, as well as the mortgage. There is no such question here as is usually presented where there is litigation over the application of payment between creditors holding distinct debts

secured by the same mortgage. Between them the rule as
to the application of the proceeds of sale of the mortgaged
property, contended for by the respondent, applies. But it
is not based upon the debtor's contract, under which the
mortgage security has been furnished. His engagement is
that the security shall be made to pay all the debts in full,
and he gives his creditors the power over it for that pur-
pose. He cannot, in ordinary cases like the present, at
least, compel an application of the proceeds of such security
according to the rule which obtains between distinct cred-
itors. After the execution of the notes and mortgage in
this case, Smith, Brassfield & Co. could have assigned the
first note only to the appellants with a distinct stipulation
in the contract of assignment that the proceeds of the mort-
gage security should first be applied in payment of the
second and third notes, and to the exclusion of the first in
the event of the insufficiency of such proceeds to satisfy all
three of the notes; and such stipulation would have been
valid. (*Dixon* v. *Clayville*, 44 Md., 573.) There is no
conflict among the authorities on this point. And if the
debtor cannot insist on the observance of the rule against
such an arrangement made exclusively between his creditors,
how can his security? If a creditor, holding all the debts
thus secured, can, by means of an assignment, confer a
right upon his assignee to apply the proceeds of the mort-
gage security in contravention of the rule, without the
debtor's assent, why should he be held bound by it if he
prefers to retain all the debts and obtain payment of them
himself? If he can give the power to make the application
in a different manner by assignment of one of the debts se-
cured, he certainly may make such application himself. In
such a case, the debtor's surety would plainly stand in his
shoes and not in the creditor's. And as the debtor could

12

not complain, the surety could not.   This conclusion virtually disposes of the whole case.   For if the appellants had the right which they exercised, of applying the proceeds of the sale of the mortgaged property to the payment of any of the debts held by them and secured by mortgage, as they might see proper, as we hold they had, in view of the facts appearing in the record of this case, then respondent has only paid what he could have been compelled to pay, and cannot recover it back.

Decree reversed, with directions to dismiss the bill.