## WOOD v. NOYES.

### WOOD et al. v. SAME.

(Circuit Court of Appeals, Ninth Circuit. February 6, 1922. Rehearing Denied May 15, 1922.)

No. 3636.

1. **Execution ⬡⟹377—Supplementary proceedings under Alaska Code.**

Under Comp. Laws Alaska 1913, § 1127, providing for supplementary proceedings after execution, and that on proof "by affidavit of the plaintiff or otherwise" that defendant has property liable to execution, which he refuses to apply toward the judgment, he may be required to appear for examination, etc., such jurisdictional facts need not be set forth by affidavit of plaintiff, but may be shown by any competent evidence.

2. **Execution ⬡⟹402—Supplementary proceedings held not terminated by order.**

Orders made in proceedings supplementary to execution, requiring judgment defendants to pay over certain sums disclosed, do not necessarily terminate such proceedings, which may be continued for the discovery of other assets.

3. **Execution ⬡⟹402—Court may direct application of sums realized through supplementary proceedings.**

Payments by judgment debtors, made pursuant to orders in personam in proceedings supplementary to execution, *held* not voluntary, and defendants *held* not to have the right to direct their application as between different judgments, which application rests with the court.

4. **Principal and surety ⬡⟹113—Surety cannot require creditor to apply proceeds of collateral on his obligation rather than another secured.**

A creditor, holding collateral security for two obligations, may apply the proceeds on either, though to the detriment of a surety on the other.

5. **Execution ⬡⟹405—Court may appoint receiver in supplementary proceedings.**

Under Comp. Laws Alaska 1913, § 1585, the court, in proceedings supplementary to execution, may appoint a receiver for property of the judgment defendant which cannot be levied upon.

Appeals from the District Court of the United States for the Fourth Division of the Territory of Alaska; Charles E. Bunnell, Judge.

Actions by F. G. Noyes, receiver of the Washington-Alaska Bank, against E. C. Wood and others. Defendant Wood and defendants Wood and McGinn separately appeal from orders made in proceedings supplementary to execution. Affirmed.

Appeals to set aside decrees made against McGinn and Wood, respectively, in proceedings supplemental to execution. Noyes as receiver held judgments against Wood, McGinn and others. The history of the litigation is found in the appeal and cross-appeal in Noyes v. Wood, 247 Fed. 72, 159 C. C. A. 290, and 247 Fed. 83, 159 C. C. A. 301. Pursuant to the mandate of this court, the District Court ordered judgments in favor of the receiver and against Wood, McGinn, and others. Certain additional judgments, which followed as a result of the cross-appeal to this court, were unsecured by bond, so that matters in the lower court stood in this way: The judgments against Wood amounted to $247,656, of which amount $33,720 was secured, and the judgment against McGinn, exclusive of interest, was $54,714, of which $37,720 was secured. Upon execution issued August 1, 1918, and levy by the marshal upon the First National Bank of Fairbanks, Alaska, the bank, by its cashier, answered that it was not indebted to Wood or McGinn, but, on the contrary, that they were indebted to the bank; that Wood owned 10 shares of the capital stock of the bank, and, so far as advised, McGinn owned 230 shares, held in pledge by the Bank of California in San Francisco as security for loans,

---

⬡⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

and that the bank had no moneys or property belonging to Wood and Mc-Ginn, or either of them. Afterwards, in proceedings supplemental to execution, Wood testified to the effect that he had $37,500 under his control in a bank in San Francisco, but that he would not apply it to the judgments against him, and would not transfer his interest in the money to the receiver, whereupon counsel for the receiver asked for an order in personam against Wood. McGinn also admitted that he had ample means in California, but that he did not propose to pay the judgments against him, and believed that ultimately the judgments against him would be set aside, and therefore that he would make no voluntary payment.

Upon motion, order in personam, dated August 2, 1918, was directed against McGinn. The order against Wood recited that it appeared that Wood had $37,000 in San Francisco, which sum was within the jurisdiction of the court in Alaska, and which Wood caused to be transferred without the jurisdiction of the court in Alaska, and that as he would not pay the sums, and had removed the money and credits with the intent and purpose of defeating the judgment, and the court having lost jurisdiction over the assets of Wood, and having jurisdiction over his person, ordered that Wood cause the $37,000 to be brought back within the jurisdiction of the court in Alaska, and that within 60 days from the date of the service of the order he pay to the registry of the court, for satisfaction pro tanto of the judgment against him, the money within his control in the Bank of California. The order against McGinn was substantially the same, except as to amounts, and was issued at the same time.

On August 8th McGinn and Wood paid to the marshal $45,000, to be applied in satisfaction of certain items contained in the original writ of execution. The payment was accompanied by a "protest" signed by McGinn and Wood. In the "protest" Wood and McGinn set forth that an order of the court was made requiring them to turn over $37,500 to satisfy the judgments against them, and that unless they did so an order for arrest would be issued, and they would be incarcerated until the order was complied with, and that whereas they wished to prevent the levy upon their property in Alaska, and to avoid proceedings against their sureties on appeal, and particularly to avoid arrest and confinement, they would make the following "proposal to the judge of the court and the plaintiff and his attorneys." The "proposal" incorporated in the protest was a promise to pay under protest on August 6, 1918, $45,000 to be applied in satisfaction of the judgment entered in cause 1756 in the Alaska court against McGinn and Wood, jointly and severally, for $33,720 and in satisfaction of the judgment entered against McGinn in that case for $3,000, and also a judgment against McGinn for $1,000, the balance ($7,280) to be applied on account of the judgment entered against the two, jointly and severally, for $16,591, McGinn agreeing to pay the balance of the last-mentioned judgment under protest on or before October 15, 1918.

The protest also set up that upon the signing of the proposal it was agreed by the judge that the orders signed by him for the arrest of Wood and Mc-Ginn should be put in the hands of the clerk of the court, with instructions not to file the orders unless Wood and McGinn failed to carry out the promises made. The protest continued: "Now, therefore, the said Wood and Mc-Ginn, in compliance with said promise and in order to avoid arrest and incarceration in said federal jail of said Wood and McGinn, do now pay to the United States marshal the said sum of $45,000, under protest, to be applied in satisfaction of the judgments enumerated in their said proposal, and promise to the judge of said court, and upon account of the judgment last mentioned therein, and do hereby notify you and each of you, and the attorneys for the plaintiff herein, that said money is paid under fear of imprisonment, and not because the same is due or owing to the plaintiff in said cause." There followed a notification to the marshal and the plaintiff to hold the money, as they, Wood and McGinn, would institute proceedings to recover back the money and to enjoin the receiver from disbursing the same.

Continuances prolonged the supplementary proceedings, and not until March 3, 1920, did the cashier of the First National Bank furnish a copy of Wood's account with the bank. Wood was subjected to further examination.

and Heilig, attorney for Wood and McGinn, after testifying that after the court had made its order in August, 1918, directing orders in personam, said: "I discovered that neither McGinn nor myself knew anything about the orders in personam, and that Mr. Wood knew nothing about them. We had no conception of what they might contain, but all of us had apprehension * * * that they might be very rigorous, and possibly might contain orders of imprisonment of these defendants, if such orders as the court might make were not complied with." He further said that they took up the matter with counsel for the receiver, and drew up the "proposition" heretofore referred to; that he never saw the orders of the court until after March 1, 1919, but was led to understand, from the attorney for the receiver, that the payment of $45,000 in accordance with the proposition would be satisfactory; that thereupon, after telegraphic communications, the First National Bank of Fairbanks paid $44,544 on the judgment in case 2528, and it was agreed that the orders in personam, just above referred to, should not be filed; that thereafter the judge said he thought the orders ought to be put on record, so that opportunity to appeal might be given; that shortly after March 1, 1919, witness found the orders on file, and was surprised to find they were not as harsh as he had apprehended; that he (the witness) always disapproved of the protest, and that the payments were not to affect the question of the application of the money, the main object being to keep the orders from becoming public records.

On March 19, 1920, Noyes, receiver, applied to the court for a receiver for the property of Wood in supplemental proceedings. He set up the judgments, the levy, the payment under protest, the supplementary proceedings, the alleged wrongful purposes of Wood, and that about November, 1917, Wood had entered into certain transactions with a view of placing his assets beyond reach of the judgment, the absence of Wood from Alaska, his return to the territory, and that there was danger of dissipation of the assets. In response to an order to show cause, Wood appeared and objected to the appointment of a receiver, but the court appointed Noyes receiver in the supplementary proceedings. On March 22, 1920, Wood and McGinn, by Heilig, formally withdrew the protest. Thereafter the court made findings and conclusions substantially as follows: That the examination disclosed that McGinn had ample means with which to pay and liquidate the judgments rendered against him jointly and severally, and that he refused to satisfy the judgments, whereupon the court made an order in personam, the order being as heretofore referred to. Generally similar findings were made as to money under the control of Wood. It was found that at the request of Wood and McGinn, through their attorney, upon a promise to pay into the registry of the court $45,000 on August 6 and October 15, 1918, "said orders in personam were withheld and not filed herein until March 1, 1919, a few days prior to the adjournment of the general March, 1918, term of this court"; that Wood and McGinn did not make payments according to the promise, but paid to the marshal on August 8, 1918, $45,000, and on April 9, 1919, McGinn paid into court $5,000, and on November 3, 1919, $5,000, and on January 15, 1920, $526.30, the total payments of Wood and McGinn being $55,526.30; that the marshal made his return in September, 1918, and paid $45,000, the return being accompanied by the protest above referred to; that the protest disclosed that $37,500 of the $45,000 was the money of Wood, and $7,500 was the money of McGinn; that the proceedings supplementary to execution also disclosed that the $37,500 belonged to Wood; that the $45,000 was not voluntarily paid, but was paid under protest, with full knowledge by Wood and McGinn of the judgments and execution, and in order to prevent levy and sale of their property, and to avoid arrest and confinement; that none of the sums paid by the defendants belonged to the sureties of Wood and McGinn; that it was impossible in August, 1918, to complete the examination of Wood and McGinn, whereupon the matters were continued, and the supplementary proceedings were not finally closed until March, 1920; that the receiver applied to the court to have the moneys paid, and that defendants McGinn and Wood resisted the motion, and that Wood caused the sum of $37,000 to be brought within the jurisdiction of the Alaska court, under the

order of the court made in personam heretofore referred to, after service of execution, and that payments made by Wood and McGinn were not voluntary, but were made under coercion and the process of the court caused by the supplementary proceedings; that certain items of the judgments against Wood and others which were unsecured should be first paid by the application of the $37,500 by a distribution pro rata upon the amounts due upon the judgments; that there was a judgment, item No. 13, for $16,591 and interest, unsecured by appeal bond or otherwise, and it should be first paid out of the money received from McGinn after payment of costs; that the balance paid by McGinn should be applied on item No. 7, another judgment. The court ordered application accordingly, and decree was made.

J. J. Lermen, W. H. Metson, G. K. Burgren, R. G. Hudson, and John L. McGinn, all of San Francisco, Cal., A. R. Heilig, of Fairbanks, Alaska, and Robt. W. Jennings, of Sausalito, Cal., for appellants.

John E. Alexander, of San Francisco, Cal., for appellee.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). [1] The assignments of error first question the jurisdiction of the District Court of Alaska in the supplementary proceedings. Section 1127, Compiled Laws of Alaska, provides that after the issuing of the execution, and upon proof by "affidavit of the plaintiff, * * * or otherwise, to the satisfaction of the court or judge thereof," that the judgment debtor has property liable to execution which he refuses to apply toward the judgment, the court may require the debtor to appear and answer under oath at a time and place specified in the order. Section 1128 provides that on appearance of the debtor he may be examined on oath by either party, and if it appear that he has any property liable to execution, the court or judge shall make an "order requiring the * * * debtor to apply the same in satisfaction of the judgment, or that such property be levied on by execution," or both, as provided, as may seem most likely to effect the object of the proceeding.

It is argued that the affidavit of Noyes in the proceeding against McGinn did not contain averments concerning the issuance of an execution, or that the judgment debtor had property liable to execution, or that he refused to apply his property toward the satisfaction of the judgment, and that the affidavit against Wood contained no averment that execution had been issued against his property. But section 1127 does not make it essential that the affidavit should state that execution has been issued. That execution has been issued may be established by affidavit or otherwise, to the satisfaction of the court. Nor does the statute require that the affidavit should state that the judgment debtor has property which he refuses to apply in satisfaction of the judgment against him. That fact, also, may be shown to the court by other competent proof. In Bridges v. Koppelman, 63 Misc. Rep. 27, 117 N. Y. S. 306, the court considered a statute where supplementary proceedings could be had upon proof of the facts "by affidavit or other competent written evidence," and held that an affidavit was not essential as a predicate for the special proceedings, and that an order could be granted upon proof of the facts by affidavit or other competent written evidence.

In the present matter the record informed the court that execution was issued August 1, 1918, was received by the marshal and docketed, and that the marshal made a return on August 1, 1918. Collins v. Angell, 72 Cal. 513, 14 Pac. 135. That the judgment debtors had property, consisting of stock in the First National Bank of Fairbanks, does appear, however, in the affidavits, and it is specially averred that Wood has "property liable to execution which he refuses to apply, and is now endeavoring not to apply, to the satisfaction of the judgment herein." No test of the sufficiency of the affidavit was made by Wood, and we hold it was sufficient to give prima facie jurisdiction. State v. Downing, 40 Or. 309, 58 Pac. 863, 66 Pac. 917; Collins v. Angell, supra; Union Bank v. Sargeant, 53 Barb. (N. Y.) 422.

The affidavit against McGinn was made under section 1131 of the Alaska Compiled Laws. The affidavit set forth admission by him and Wood of the ownership in 1916 of 230 shares of stock in the First National Bank of Fairbanks, and belief by the affiant that McGinn and Wood owned certain shares in the bank, but that the cashier had failed to furnish to the marshal a proper certificate as provided by law; that the certificate furnished was unsatisfactory, and that it could not be determined from the certificate what the true interest of McGinn and Wood was; and that an order should be made to require the bank's officer to appear and give information. Section 1131 provides that, when the marshal with an execution shall apply to any person mentioned in subdivision 3 of section 972, for the purpose of levying upon property therein mentioned, the person shall give to the marshal a certificate as prescribed by the statute. If such person or officer refuse to do so, "or if the certificate be unsatisfactory to the plaintiff in the writ," he may have the order prescribed in section 974 against such person or officers, and thereafter proceedings upon such order shall be conducted as prescribed by section 975 to 993, inclusive. Subdivision 3 of section 972, Alaska Compiled Laws, provides that certain personal property shall be attached by leaving a certified copy of the writ and notice with the person having possession of the same, or, if it be a debt, then with the debtor, or, if it be rights or shares of stock, then with the person or officer of the association as the Code may authorize. Section 975 provides that, if the certificate is unsatisfactory to the plaintiff, the person may be required to appear in court and be examined, and section 992 provides that witnesses, including the defendant and garnishee, may also be required to testify, and section 993 authorizes the issuance of a restraining order. No objection was interposed by Wood and the hearing was properly proceeded with.

[2] It is said that the orders in personam terminated the supplementary proceedings. After those orders were signed on August 2, 1918, and payments were made thereunder, there remained two matters for disposition: How the money collected from the judgment debtors should be applied, and the application for the appointment of a receiver for the property of the judgment debtor Wood. Separate motions, filed in February and March, respectively, 1920, were made with respect to these matters. The obvious duty of the court was to see that the moneys collected were properly applied, and section 1585, Alaska Statutes, concerning receivers, guided the court in the receivership matter.

Compliance had with the orders in personam did not satisfy the judgment against Wood and McGinn, and the court went no farther than to direct the disposition of the property which, up to the time of the orders, had been discovered and reported upon. The further hearing had was as to Wood's ownership of stock, concerning which the cashier of the bank was long previously directed to prepare a statement. It is not necessary to go. into detail, but the findings of the court in the matter are well sustained; the only reasonable inference from the testimony being that, when the testimony closed on August 2d, the supplementary proceedings were incomplete, and that it was then contemplated that they would be resumed at a later time. As far as the order in personam directed the payment of a specific amount of money, it may have been in effect final; but it was by no means final as to any other money or property belonging to Wood, which might have been disclosed by the further examination of the cashier of the bank and of the statement which he was directed to prepare.

[3] Appellants argue that they were ignorant of the contents of the orders in personam, and that there was an agreement between the litigants to which the judge was also a party, whereby there should be a certain application of the payments of the money paid over. The court's findings are in direct conflict with such contentions, and we find that the evidence is in accord with the lower court's conclusions. There was anxiety to have the orders of the court held back, in order to prevent a run on the bank in which Wood and McGinn were very large stockholders, and we gather from all the evidence that the moneys were paid involuntarily, solely in compliance with the orders of the court. That the moneys paid were inadequate to meet the judgments on file is indisputable. Payments having been involuntary, McGinn cannot claim credit for the $37,500 paid by Wood, and, by thereto adding what Wood paid, plead payment of the judgments against him, when the fact is that Wood still owes approximately $240,000, and McGinn approximately $37,000.

It is said, however, that the court was in error in the application of the payments. It appears that on May 3, 1919, the receiver moved the court to have the moneys which had been placed in the registry of the court applied in a particular way. Wood and McGinn made separate answers or objections. Wood set up that the only payment made by reason of the judgments entered against him was $37,000 paid August 8, 1918, by and on behalf of Henry Riley, one of the sureties of Wood and McGinn upon appeal to the Circuit Court of Appeals from the judgment against Wood, McGinn, and others in the action of Noyes v. Wood and others, the judgment being for $33,720, and that the balance paid in behalf of the surety was on account of certain items in the judgment referred to, recovered against McGinn and others, not including Wood, upon appeal, wherein Riley and others were sureties.

Wood also set up that to the sum of $30,000 paid by the sureties McGinn added $7,950 to make up the $45,000 paid August 8, 1918, together with sums included in judgments against McGinn and others. It was also alleged that, when the $45,000 was paid, it was specifically appropriated by and on behalf of the sureties and McGinn, as stated, and was accepted accordingly by the marshal. Wood then pleaded that

in 1917 and 1918, desiring to protect his sureties against loss, he delivered to the Bank of California money and securities, in amount $17,000, in trust for the benefit of Riley as surety upon the appeal bond; that subsequently Riley, as surety, paid $20,000 into the bank to be applied on account of the judgments for the payment of which he had become liable by the affirmance on appeal of the judgments of June 15, 1914; and that on August 5, 1918, the cashier of the bank, in behalf of the surety, paid to the bank at Fairbanks, Alaska, $37,000 to pay the judgments entered June 15, 1914, against Wood and McGinn.

McGinn's objections to the application of the payments were that he paid $7,955 on August 8, 1918, included in the $45,000 paid, and $5,-000 on April 9, 1919, and that $675 of that sum was appropriated by McGinn to judgments against him in the case just above referred to, and the balance, $7,280, was appropriated by him in part payment of the judgment of $16,591 against him and others, entered in the above referred to case on August 1, 1918, and that the $5,000 payment on April 9, 1919, was specifically paid on account of the judgment of $16,591, rendered against him and others on August 1, 1918.

The court denied the motion of the receiver for application of payments, but made the order "without prejudice to future applications," and appellants say that the order or judgment denying the motion became res judicata. But the court was not making final orders with respect to the whole proceeding. The application first made only affected $45,000, paid under protest; the second application involved $55,000, and the denial of the motion without prejudice had the effect of not foreclosing the right of the receiver to apply for further orders. It is quite evident, too, that at the last hearing defendants regarded the matter as open for investigation, for they then raised no point that the former order was res judicata, and limited their contest solely to the manner of the application of the moneys, and they should not now be heard to contravene the usual effect of the words "without prejudice," which would prevent them from availing themselves of the defense of res judicata in the subsequent proceeding. Beach on Eq. Prac. § 643, 644; Comegys v. Hendricks, 55 Or. 533, 106 Pac. 1016.

In considering the judgments and the application of moneys, these facts are material: The judgments against Wood amounted to $274,-000. Only one was secured, that for $33,720 against Wood, McGinn, and certain others, jointly and severally. The judgments against McGinn which were secured were, two for $3,000 and $1,000, respectively, running against McGinn and others jointly and severally; unsecured judgments for $16,591 ran against McGinn and others, jointly and severally; also, judgment for $16,500 and over ran against Wood, McGinn, and others jointly and severally. The receiver, in his last showing before the court, set forth all these judgments, and averred and proved to the satisfaction of the court that it was for the best interests of the estate that the moneys collected should be applied on judgments against certain other persons jointly and severally liable with Wood and McGinn, for the reason that one of such persons, Jesson, was out of the jurisdiction and was execution proof, and that two others liable were dead and left no estates. Obviously judgments which could not be collected from the co-judgment debtors of Wood

and McGinn, and which were not secured, were in a precarious condition, and it was for the best interests of the estate to collect, if it were possible to do so. The court took this view, and made findings and judgment accordingly.

Authorities controlling the right of the debtor to make application of payments voluntarily made are not relevant, for, as already said, the payments in the case before us were involuntary. The defendants therefore lost the right to direct the applications of the payments, and the court had the authority to make appropriation. United States v. Kirkpatrick et al., 9 Wheat. 720, 6 L. Ed. 199; 30 Cyc. 1228; Wilson v. Allen, 11 Or. 154, 2 Pac. 91; Smith v. Moore, 112 Iowa, 60, 83 N. W. 813; Backhouse v. Patton, 5 Pet. 160, 8 L. Ed. 82.

Further point pressed is that, of the money paid by Wood, $37,500 was advanced by a surety. The substance of the evidence in respect to this is that $37,500 belonged to Wood; that $17,500 was his own money in bank in San Francisco, and was part of $23,000 which he took out of the jurisdiction of the Alaska court; and that the balance was money borrowed from a bank in San Francisco on a loan secured by 190 shares of stock in the bank in Alaska. Riley's relation to the transaction was as follows: Wood borrowed $20,000; McGinn made a note for $20,000 in favor of Riley, and Wood indorsed the note; Wood's stock and the note were put in the bank in San Francisco as security for the loan of $20,000 to Wood. In 1919 the dividends on the bank stock amounted to $9,500, which was paid to bank, and a credit for $6,758 on the note was given. Riley did not advance his own money. The Bank of California held the note with security by way of pledge of Wood's 190 shares. Possible liability of Riley would not be fixed until after the bank disposed of the pledged stock, and even then McGinn might be liable on the obligation as maker.

[4] We fail to see how Wood can contend that the money obtained on the note was a payment by Riley, or on his behalf, upon any of the judgments against Wood. If Riley desires to raise any question, nothing in these proceedings will estop him; but the record affords no ground for excluding the case from the general rule that, where a creditor holds two obligations, one better secured than the other, and has collateral security for both alike, in the absence of an agreement he has the right to have the collateral applied upon the obligation which is the more precarious by reason of being the least secured; and if it be a fact that, by the terms of a pledge to secure the obligations, the property pledged as security has been intended for the protection of the surety on one of the obligations as well as to secure the creditor, the right of the creditor is not affected, for he may make the application of the proceeds of the pledge apply toward the debt least secured, even to the detriment of the sureties on the other obligation. California National Bank v. Ginty, 108 Cal. 148, 41 Pac. 38; Noble v. Murphy, 91 Mich. 653, 52 N. W. 148, 30 Am. St. Rep. 507; Wilson v. Allen, supra.

[5] It is insisted that the order appointing a receiver of the property of Wood was erroneous, but, as the application stated ample ground for the exercise of jurisdiction, the court properly treated the proceeding as incidental to those supplementary to execution. Section

1585, Alaska Laws; Matter of Crane, 81 Hun (N. Y.) 86, 30 N. Y. Supp. 616. Any transfer made to the receiver was merely of the interest of Wood in the properties described in the findings, and which would not be reached by execution, and which was not exempt from execution. Indeed, the order directing the transfer specifically directs that it shall not cover any property subject to execution.

Close examination of the entire record satisfies us that the court was right in its conclusions, and that its judgment should be affirmed.